**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-01141-MSK-NYW

TATONKA CAPITAL CORPORATION, a Colorado corporation,

      Plaintiff,

v.

MICHAEL CONNELLY,
DAWN EIDELMAN, and
GENE EIDELMAN,

      Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

This civil action is before the court on the Plaintiff Tatonka Capital Corporation's three related motions:

(1)    Plaintiff's Motion to Dismiss Defendant Connelly's First and Third Counterclaims, Motion for a More Definite Statement of Second Counterclaim and Motion to Strike Jury Demand ("Motion to Dismiss Connelly's Counterclaims"), [#32, filed July 21, 2016];

(2)    Plaintiff's Motion to Dismiss Defendant Eidelmans' Counterclaims and Motion to Strike Jury Demand, [#47, filed August 29, 2016]; and

(3)    Plaintiff's Motion to Dismiss Defendant Eidelmans' Amended Counterclaims and Motion to Strike Jury Demand ("Motion to Dismiss Eidelmans' Amended Counterclaims"), [#57, filed October 4, 2016].

Plaintiff's motions (collectively, "Motions to Dismiss") are before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), the Order Referring Case dated July 18, 2016 [#27], and the memoranda dated August 1, 2016, September 20, 2016, and November 8, 2016.  [#40; #52; #59].   After carefully considering the Motions to Dismiss and associated briefing, the entire case file, the applicable case law, and the comments offered during the September 13, 2016 Motion Hearing, this court has determined that further oral argument will not materially assist in the disposition of this matter. *See* [#50].  Thus, the motions are ripe for determination and this court respectfully RECOMMENDS the Motion to Dismiss Connelly's Counterclaims be GRANTED IN PART and DENIED IN PART; the Motion to Dismiss the Eidelmans' Amended Counterclaims be GRANTED IN PART and DENIED IN PART; and the Motion to Dismiss the Eidelmans' Counterclaims be DENIED AS MOOT.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Tatonka Capital Corporation ("Plaintiff" or "Tatonka") is a Colorado Corporation with its principal place of business in Douglas County, Colorado.  [#1 at ¶ 1]. Defendant Michael Connelly ("Defendant Connelly" or "Mr. Connelly") is an individual who resides in the State of New York, and Defendants Dawn and Gene Eidelman (the "Eidelman Defendants") are individuals who reside in the State of Georgia.  [*Id.* at ¶ 2].  Defendant Connelly and the Eidelman Defendants (collectively, "Defendants") are shareholders of Mosaica Eduction, Inc. ("Mosaica"), a Delaware corporation "primarily engaged in the business of managing charter schools." [#44-2 at 2–3].  On May 17, 2016, Plaintiff filed this diversity action in the United States District Court for the District of Colorado.  [#1].  Tatonka's operative

Complaint asserts a single breach of contract claim against Defendants for their alleged breach of several Guaranty Agreements entered into with Tatonka.[1]  [*Id.* at 3].

Plaintiff alleges that on or about October 30, 2007, Tatonka and Mosaica entered into a contract titled "Revolver Loan and Security" (the "Revolver Commitment").  [*Id.* at ¶ 6]. Pursuant to this agreement, Tatonka agreed to loan up to $10,000,000 to Mosaica.[2]  [*Id.*]. Between November 1, 2009 and October 11, 2013, Tatonka and Mosaica decreased the maximum loan amount to $6,805,000 through approximately twenty-seven (27) "Loan Modification Agreements."  [*Id.* at ¶ 7].  With the signing of these "Loan Modification Agreements," each Defendant also signed a series of written Guaranty Agreements whereby each Defendant "absolutely and irrevocably guaranteed the obligations of Mosaica to Tatonka."  [*Id.* at ¶ 8].

Then, in 2013, Mosaica defaulted on its obligations pursuant to the Revolver Commitment, as modified by the "Loan Modification Agreements."  [*Id.* at ¶ 9].  A year later, Plaintiff filed a civil action against Mosaica in the United States District Court for the Northern District of Georgia (the "Receivership Action").  *See* [*id.* at ¶ 10; #44-2].  On or about October 20, 2014, the Northern District of Georgia appointed a Receiver for Mosaica.  [*Id.*].  On December 11, 2015, the Northern District of Georgia entered a final judgment in favor of Plaintiff in the amount of $5,068,480.22 plus 18% interest per annum—an amount offset by

---

[1] The Guaranty Agreements at issue contain a forum selection clause that requires all actions arising under the agreements be brought in Colorado state courts or the federal district court for the District of Colorado.  *See, e.g.*, [#57-2 at 7].  In addition, the same provision states that Colorado law will govern any legal proceedings, and the Parties do not dispute that Colorado law governs this diversity action; thus, this court applies Colorado law.  [*Id.*].

[2] Because the Parties do not provide a copy of the Revolver Commitment to the court, this court's knowledge of its terms is limited to the Parties' discussion of the agreement in their respective pleadings.

Plaintiff's prior collection of some funds from Mosaica and after liquidation of Mosaica's other collateral. [*Id.* at ¶ 11].

In the present action, Tatonka seeks to recover the $5,068,480.22 plus 18% interest per annum from Defendants based on the Guaranty Agreements signed by each Defendant. *See* [*id.* at ¶¶ 13, 15]. Plaintiff alleges that it performed all conditions precedent to the Guaranty Agreements and that Defendants have failed to pay the above remaining balance. [*Id.* at ¶¶ 14, 15]. Therefore, according to Plaintiff, Defendants are jointly and severally liable to Tatonka pursuant to the Guaranty Agreements. [*Id.* at ¶ 16].

On June 27, 2016, the Eidelman Defendants[3] filed their Answer to Plaintiff's Complaint. [#20]. The Eidelman Defendants amended their answer once as a matter of course on July 18, 2016 [#29], and filed their Second Amended Answer pursuant to Plaintiff's consent on September 22, 2016 [#55-1], which is their operative Answer in this matter. The Eidelman Defendants assert, *inter alia*, that they satisfied their obligations under the Guaranty Agreements, which were for short-term advances; that they never agreed to be personally liable for the debts of Mosaica outside the Guaranty Agreements; that Plaintiff failed to mitigate its damages; and that Plaintiff's claims against them are frivolous. *See generally* [*id.* at 6–19]. The Eidelman Defendants also assert two counterclaims against Tatonka for fraudulently inducing them into signing the Guaranty Agreements and, alternatively, for breaching the covenant of good faith and fair dealing. *See* [*id.* at 20–24].

---

[3] From the inception of this action through the briefing of these motions, counsel represented the Eidelman Defendants. This court granted the motion to withdraw as counsel filed by the Eidelman Defendants' counsel on December 16, 2016, and the Eidelmans are now proceeding *pro se.*

On June 30, 2016, Defendant Connelly, who is proceeding *pro se*,[4] filed his Answer to Plaintiff's Complaint. [#21]. Similarly, Defendant Connelly avers, *inter alia*, that he satisfied any and all obligations owed to Plaintiff under the Guaranty Agreements; that Defendants are not personally liable for the debt at issue; and that Tatonka overstated the amount owed by Mosaica. [*Id.* at ¶¶ 19, 21, 23, 25]. In addition, Defendant Connelly asserts three counterclaims against Plaintiff, including: (1) Tatonka's allegations are frivolous; (2) Tatonka's course of conduct is subject to lender liability;[5] and (3) Tatonka's breach of a "loan participation" security agreement entered into between Tatonka and Defendant Connelly. [*Id.* at 3–6].

Plaintiff filed its Motion to Dismiss Connelly's Counterclaims on July 21, 2016. [#32]. This court held a motion hearing on this motion on September 13, 2016, and took the motion under advisement. *See* [#50]. Plaintiff also filed a Motion to Dismiss Defendant Eidelmans' Counterclaims and Motion to Strike Jury Demand [#47] on August 29, 2016, which is superseded by the Eidelman Defendants' filing of their Second Amended Answer [#55-1] and the subsequent Motion to Dismiss Eidelmans' Amended Counterclaims [#57], filed on October 4, 2016.[6] The motions are fully briefed and ripe for Recommendation. Accordingly, this court considers the Parties' arguments below.

---

[4] While Mr. Connelly is proceeding *pro se*, he represented during the motions hearing held on September 13, 2016, that he is an attorney, albeit not a practicing one. Although the courts generally construe pleadings filed by *pro se* litigants liberally, that liberal standard is not extended to *pro se* litigants who, like Mr. Connelly, are also attorneys. *See Tatten v. Bank of Am. Corp.*, 582 F. App'x 718, 720 (10th Cir. 2014).

[5] Although Defendant Connelly makes no mention of lender liability in his Answer [#21], he clarifies in his response to Plaintiff's motion to dismiss that the second counterclaim is for lender liability. *See* [#41 at 6].

[6] *Gotfredson v. Larsen LP*, 432 F. Supp. 2d 1163, 1172 (D. Colo. 2006) (noting that defendants' motions to dismiss are "technically moot because they are directed at a pleading that is no longer operative"); *Entek GRB, LLC v. Stull Ranches, LLC*, No. 11-CV-01557-PAB-KLM, 2012 WL 715655, at *1 n.2 (D. Colo. Mar. 6, 2012).

## LEGAL STANDARDS

### I.  Federal Rule 12(b)(6)

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted).  "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Id.*  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Rule 12(b)(6) provides that the court may only consider facts alleged within the complaint.  *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).  Should the court receive

and consider materials outside the complaint, the court may convert a Rule 12(b)(6) motion to a motion for summary judgment if the parties have notice of the changed status and the nonmovant responded by supplying its own extrinsic evidence. *See Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004). However, a district court may consider legal arguments contained in the memorandum in opposition to dismiss or documents referred to in the complaint that are central to a plaintiff's claim if the Parties' do not dispute their authenticity without converting the Rule 12(b)(6) motion into a summary judgment motion. *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).

## II.     Federal Rule 12(e)

A party may seek a more definite statement of another's claims when the pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e); *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1376 (Rule 12(e) applies when the pleading is "so vague or ambiguous that the opposing party cannot respond to it, even with a simple denial as permitted by Rule 8(b), with a pleading that can be interposed in good faith or without prejudice to himself"). "Motions for more definite statements under Rule 12(e) . . . are generally not favored by the courts because of the liberal pleading requirements embodied in Rule 8(a)." *Mullins v. I. C. Sys., Inc.*, No. 07–cv–00397–RPM–PAC, 2007 WL 1795871, at *2 (D. Colo. June 21, 2007) (citing *Daley v. Regional Transp. Dist.*, 142 F.R.D. 481, 485 n.3 (D. Colo. 1992); *Classic Commc'ns, Inc. v. Rural Telephone*, 956 F. Supp. 910, 923 (D. Kan. 1997)). "If the opposing party is able to determine the issues he must respond to, the pleading is sufficient." *Id.* (citing 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1376; *Montagriff v. Adams Cnty School Dist. 14*, 128 F.R.D. 117, 117–18 (D. Colo. 1989)).

III.     **Federal Rule 12(f)**

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a district court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "The rule's purpose is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case."  *Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275, 285 (D. Colo. 1997) (citation omitted).  However, striking allegations or dismissing pleadings pursuant to Rule 12(f) is "a generally-disfavored, drastic remedy."  *Id.* (citing *U.S. v. Smuggler-Durant Mining Corp.*, 823 F. Supp. 873, 875 (D. Colo. 1993)).  Ultimately, "discretion remains with the Court to grant or deny" a motion to strike.  *Big Cats of Serenity Springs, Inc. v. Vilsack*, No. 13–cv–03275–REB–KLM, 2015 WL 1432069, at *13 (D. Colo. Mar. 25, 2015).

## ANALYSIS

I.     **Defendant Connelly's Counterclaims**

Plaintiff argues that Defendant Connelly's First and Third Counterclaims should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. [#32 at 2–4].  In addition, Plaintiff seeks a more definite statement of Defendant Connelly's Second Counterclaim, as this claim "fails to identify any particular claims and fails to state the elements of any particular claim."  [*Id.* at 5].

A.     **Counterclaim One:  Frivolousness**

Defendant Connelly's First Counterclaim alleges that Plaintiff, its former and current shareholders, and attorneys know that "[t]his action and its allegations of multi-million dollar liability for personal guarantees of corporate debt are frivolous."  [#21 at ¶ 27].  Mr. Connelly contends that this lawsuit is "groundless and designed to harass and intimidate defendants and to

damage their reputation, credit and employment opportunities," and that proceeding with this suit will continue to subject him to harassment, mental anguish, and expense. [*Id.* at ¶¶ 27–28]. In addition, Plaintiff, its officers, and attorneys brought this suit without a reasonable belief that Defendants are personally liable to Tatonka for more than $5,000,000, as Plaintiff knew or should have known that all guarantees alleged in the Complaint were fully satisfied and revoked, and that Defendant Connelly has no liability under such guarantees. [*Id.* at ¶ 28].

Plaintiff argues that Defendant Connelly's First Counterclaim "alleges no specific facts whatsoever (other than incorporation of ¶¶ 1 through 25 of [his] Answer)." [#32 at 2]. According to Plaintiff, this counterclaim fails to state a claim or, at the least, is "premature," as Defendant Connelly may pursue attorney's fees "and/or other relief if and when Plaintiff's claim is dismissed on the merits." [*Id.* at 3]. In his response,[7] Defendant Connelly argues that his First Counterclaim states a claim for relief for violation of Rule 11(b) of the Federal Rules of Civil Procedure and for abuse of process. [#41 at 3]. For the following reasons, this court respectfully disagrees that a claim for frivolousness is viable under either theory.

To start, to the extent Defendant Connelly's First Counterclaim is a request for sanctions under Rule 11(c) of the Federal Rules of Civil Procedure, because Plaintiff's claim is frivolous, such a request is procedurally deficient. This is because such a request under Rule 11(c)(1) requires the moving party to file a separate motion for the trial court's consideration, which Defendant Connelly fails to do. Fed. R. Civ. P. 11(c)(2). *See, e.g., Mills v. Prudential Ins. Co. of Am.*, 856 F. Supp. 2d 1218, 1224 (D. Colo. 2012) (denying Defendant Stephen Mill's Rule 11

---

[7] Although Defendant Connelly seeks to clarify his counterclaims in his response to Plaintiff's Motion to Dismiss, this court's analysis is limited to the facts as set forth in his Answer for purposes of Rule 12(b)(6). *See, e.g., In re Qwest Communications Int'l., Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (explaining that the sufficiency of the plaintiff's allegations is based on those in the complaint, as "[t]he plaintiff[] may not effectively amend his Complaint by alleging new facts in his response to a motion to dismiss.").

motion because his request for fees under Rule 11 was made in his motion to dismiss and because he failed to comply with the requirements of this District's local rule governing motions for attorney's fees, D.C.COLO.LCivR 54.3); *Duprey v. Twelfth Judicial Dist. Court*, 760 F. Supp. 2d 1180, 1226 (D.N.M. 2009) (holding as procedurally deficient a rule 11 request for sanctions "tagged" on the end of a motion to dismiss).

Next, insofar as Defendant Connelly's First Counterclaim seeks to allege a claim predicated on the tort of abuse of process, this court concludes that Defendant Connelly fails to sufficiently plead this claim.   To bring a claim for abuse of process, the plaintiff must demonstrate:  "(1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of the proceedings, that is, use of a legal proceeding in an improper manner; and (3) resulting damage."   *Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo. App. 2006).  "Abuse of process lies where a party invokes legal proceedings, not for their intended purpose, but in an effort to obtain collateral results that would not be available by the normal operation of such proceedings." *Tara Woods Ltd. P'ship v. Fannie Mae,* 731 F. Supp. 2d 1103, 1123 (D. Colo. 2010), *aff'd,* 566 F. App'x 681 (10th Cir. 2014).  Examples of ulterior motives include filing liens against property to force an adversary to concede a child custody proceeding, *id.*, or filing an action against an individual to compel him to cooperate in the case against the main defendant and "send a message to the community." *S.E.C. v. Nacchio,* No. 05–cv–00480–MSK–CBS, 2006 WL 2793149, at *1 (D. Colo. Sept. 27, 2006).

In his response to the Motion to Dismiss, Defendant Connelly avers that he sufficiently alleges an abuse of process claim, because his answer indicates that all Defendants satisfied their obligations under the Guaranty Agreements, a fact Plaintiff was aware of, and that Plaintiff

believed the guarantees to be revoked.  [*Id.* at 2–3; #21 at ¶¶ 19, 20, 21].[8]  These allegations, however, fail to articulate how Tatonka is using this legal proceeding for an improper purpose; Defendant Connelly does not identify any collateral result that Plaintiff seeks to achieve.  [#21]. He does not articulate to what end Plaintiff is attempting to harass or intimidate him, or to deprive him of credit or employment opportunities.  For instance, Defendant Connelly does not allege that Plaintiff is using this action to keep him from competing in the same market as Tatonka.  Instead, Defendant Connelly's arguments are directed to his disagreement as to the merits of the underlying claim; but a claim for abuse of process is extrinsic to the merits of a case.  *See Nacchio*, 2006 WL 2793149, at * 5.  The fact that there is an incidental motive or consequence of harassment or intimidation to a process that is otherwise invoked for its normal purpose does not give rise to a cognizable claim for abuse of process.  *Tara Woods*, 731 F. Supp. 2d at 1123; *Sterenbuch v. Goss*, 266 P.3d 428, 439 (Colo. App. 2011) ("If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim.") (quotation and citation omitted). Accordingly, this court respectfully RECOMMENDS that Defendant Connelly's First Counterclaim be DISMISSED WITHOUT PREJUDICE.

---

[8] Defendant Connelly also relies on *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159 (10th Cir. 1985), in support of his abuse of process claim; however, *Dreiling* dealt specifically with an award of fees against an attorney under 28 U.S.C. § 1927, and did not address the tort of abuse of process.  This court also does not address any basis not asserted by Mr. Connelly that might afford him the opportunity to recover attorney's fees and/or costs associated with this action if the court later determines it was frivolous or vexatious.

**B.     Counterclaim Three:  Breach of Contract**

Under Colorado law, the elements of a breach of contract claim are:  (1) the existence of a contract; (2) the counter-plaintiff's performance of its contractual obligations or its justification(s) for non-performance; (3) the counter-defendant's failure to perform; and (4) the counter-plaintiff's damages.  *See Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.*, 958 F. Supp. 2d 1238, 1243 (D. Colo. 2013) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).  Defendant Connelly asserts, "[o]n or about June 28, 2013, I purchased for $250,000 a 'loan participation' security from Tatonka."  [#21 at ¶ 41].  He further avers that "[t]he security issued by Tatonka was in the form of a partial assignment of $250,000 (principal amount) of a $500,000 Promissory Note issued by Mosaica Education."  [*Id.*].  Mr. Connelly then contends "No payment in respect of such loan participation security has been made by Tatonka to me."  [*Id.* at ¶ 42].  Defendant Connelly concludes, "[u]pon information and belief, I am owed approximately $375,000 in respect of that loan participation."  [*Id.* at ¶¶ 41–42].

Plaintiff argues that Defendant Connelly's Third Counterclaim fails to allege Tatonka's breach of the Assignment Agreement, because according to the express terms of the Assignment Agreement, Defendant Connelly fails to allege that Tatonka received any payment from Mosaica.  [#32 at 3–4].  Tatonka attaches as Exhibit 1 to its Motion to Dismiss Connelly's Counterclaims a copy of the Assignment Agreement signed by Defendant Connelly.  *See* [#32-1].  Defendant Connelly argues in his response that this court may not consider the Assignment Agreement without converting Plaintiff's motion to one for summary judgment, but such an argument is inapposite.  Even without considering the terms of the Assignment Agreement at all, this court finds that within the four corners of his Answer and Counterclaims,

Mr. Connelly has failed to allege sufficient facts to state a cognizable claim for breach of contract.

This court recognizes that exhaustive pleading is unnecessary for a breach of contract claim to survive a motion to dismiss. *See Rader v. Elec. Payment Sys., LLC,* No. 11–cv–01482–MSK–CBS, 2012 WL 4336175, at *5 (D. Colo. Sept. 21, 2012). But nowhere in his Answer and Counterclaims does Mr. Connelly even identify the Assignment Agreement or describe what obligations Tatonka undertook under the contract that constitutes its failure to perform. [#21 at ¶¶ 40–42]. It fails to describe in even basic terms what obligations Tatonka undertook to make any payment on the "loan participation." [*Id.*]. Although Plaintiff attached the Assignment Agreement to its Motion to Dismiss Connelly's Counterclaims and Defendant Connelly made arguments about Plaintiff's obligations under the agreement in his Response [#41 at 4–6], this cannot save the Third Counterclaim as pled. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (explaining that the Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the [answer] after taking those allegations as true."). A complaint must have sufficient factual assertions to raise the right to relief above a conclusory or speculative level. *Iqbal*, 129 S. Ct. at 1950; *Twombly*, 550 U.S. at 555. Thus, this court respectfully RECOMMENDS that Defendant Connelly's Third Counterclaim be DISMISSED WITHOUT PREJUDICE.

### C.    Counterclaim Two: More Definite Statement

Plaintiff also seeks a more definite statement of Defendant Connelly's Second Counterclaim under Rule 12(e) of the Federal Rules of Civil Procedure. [#32 at 4]. Plaintiff argues that this counterclaim is an improper "shotgun" pleading that is too vague and ambiguous for Plaintiff to reasonably respond. [*Id.*]. Further, Plaintiff avers, to the extent Defendant

13

Connelly seeks to allege lender liability as his Second Counterclaim, such a claim may be barred under the Colorado Credit Agreement Statute of Frauds, Colo. Rev. Stat. § 38–10–124. [#44 at 5]. For the following reasons, this court respectfully disagrees.

Defendant Connelly's Second Counterclaim begins by incorporating the allegations contained in paragraphs one through twenty-five of his Answer.[9] [#21 at ¶ 29]. Defendant Connelly continues that Tatonka and Mosaica developed a "business/lending relationship" in or about 2001 that was mutually beneficial for more than a decade. [*Id.* at ¶¶ 30–31]. However, on or about January 1, 2013, Mosaica began experiencing financial distress, allegedly caused by the substantial interest and fees Mosaica paid to Tatonka. [*Id.* at ¶ 31]. This led to Tatonka "assert[ing] day-to-day control over Mosaica's operations," including the hiring of Tatonka's CEO's daughter to Mosaica's publishing curriculum division, "where Tatonka was able to gain access to confidential information and trade secrets." [*Id.*]. Then, Tatonka established a spendthrift[10] "Trust Account" and bank account in Mosaica's name, but Tatonka maintained full control over both accounts. [*Id.* at ¶ 32]. Specifically, Tatonka's CEO and CFO were the sole signators on the Trust Account and represented that they "assumed fiduciary responsibility to Mosaica and its officers." [*Id.* at ¶ 33].

Despite this representation, Defendant Connelly alleges that Plaintiff and its CEO and CFO breached their fiduciary duties owed to Mosaica and its officers. [*Id.* at ¶ 34]. For example, Tatonka's CEO and CFO arranged for payment of certain Mosaica creditors at the

---

[9] Paragraphs one through sixteen are Defendant Connelly's responses to Plaintiff's allegations, many of which are denials, and paragraphs seventeen through twenty-five contain his affirmative defenses, summarized above. *See* [*id.* at ¶¶ 1–25].

[10] Spendthrift trusts prevent creditors of the trust's beneficiaries from seizing or attaching liens to trust assets; however, once the trust distributes those assets, "they are within the reach of creditors." *See In re Estate of Beren*, 321 P.3d 615, 621 (Colo. App. 2013).

expense of paying Mosaica employees and taxing authorities and at least once, "on information and belief," used trust assets, designated for tax withholdings and pensions, to pay Tatonka officers and shareholders.  [*Id.*].  Further, Tatonka directly interfered with Mosaica's business relationship with its clients by knowingly misrepresenting Defendants' conduct to Mosaica's clients "in an effort to turn clients against defendants;" Plaintiff misrepresented the status and proposed use of received proceeds; Plaintiff, "at the 11th hour," demanded that Defendants name Tatonka's officers as Mosaica's officers and grant Tatonka a controlling interest in Mosaica's stock, despite Plaintiff's agreement to forebear on demanding repayment of Mosaica's loans until the new school term began; and Plaintiff manipulated Mosaica into appointing a receiver— a tactic Tatonka used to extract benefits for itself, officers, and shareholders "to which it was not legally entitled."  [*Id.* at ¶¶ 35–37].  Ultimately, the receiver, at Tatonka's behest, failed to represent the interests of Mosaica and, instead, Tatonka controlled the liquidation of Mosaica's assets and "used that leverage to negotiate sweetheart deals for itself" to Defendant Connelly's detriment.  [*Id.* at ¶¶ 38–39].

Plaintiff contends that these allegations fail to specify a cause of action or the elements of a specific cause of action to which it can respond.  [#32 at 6].  In his response, Defendant Connelly argues that his Second Counterclaim sufficiently alleges a claim for lender liability.  [#41 at 6].  Specifically, this counterclaim "lays out a detailed factual narrative of Tatonka's course of conduct of self-dealing and unjust enrichment, in breach of its fiduciary obligations and duty of good faith, once it assumed control of Mosaica's operation."  [*Id.*].

To state a breach of fiduciary duty claim, Defendant Connelly must allege (1) that Plaintiff was acting as a fiduciary of Defendant Connelly; (2) that Plaintiff breached a fiduciary duty owed to Defendant Connelly; (3) that Defendant Connelly incurred damages; and (4) that

Plaintiff's breach was the cause of Defendant Connelly's damages.  *See Sewell v. Great Northern Ins. Co.*, 535 F.3d 1166, 1172 (10th Cir. 2008) (citing *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993)).  Making all reasonable inferences in his favor, this court finds that Mr. Connelly adequately pleads a breach of fiduciary duty claim as his Second Counterclaim against Tatonka.  And, although he does not specifically identify a cause of action or its elements, there is no such requirement under the Federal Rules of Civil Procedure.  *See Mechler v. United States*, No. 12–1183–EFM–GLR, 2012 WL 5289627, at *2 (D. Kan. Oct. 23, 2012) (explaining that, for purposes of Rule 12(e), a plaintiff is not required to specifically identify a cause of action or the elements of any tort, so long as the complaint provides the defendant fair notice of the claim and the grounds for it).  Tatonka may use discovery to confirm the legal theory applicable to Mr. Connelly's Second Counterclaim.  Whether Defendant Connelly's Second Counterclaim sufficiently alleges a claim that would survive a dispositive motion or is barred by the Colorado Credit Agreement Statute of Frauds is immaterial at this stage, because, at a minimum, Defendant Connelly's allegations are not so vague or ambiguous that Tatonka could not reasonably respond.  *See eSoft, Inc. v. Astaro Corp.*, No. 06–cv–00441–REB–MEH, 2006 WL 2164454, at *1 (D. Colo. July 31, 2006).  Accordingly, this court respectfully RECOMMENDS that Plaintiff's request for a more definite statement of Defendant Connelly's Second Counterclaim be DENIED.

## II.     The Eidelman Defendants' Counterclaims

Plaintiff also seeks the dismissal of the Eidelman Defendants' counterclaims under Rule 12(b)(6), and this court addresses Plaintiff's arguments below.

### A.      Fraudulent Inducement

Under Colorado law, to establish fraudulent inducement, the Eidelman Defendants must demonstrate:   (1) a misrepresentation of material fact by Tatonka; (2) their reliance on this misrepresentation; (3) that their reliance was justifiable; and (4) that their justifiable reliance caused damages.  *J.A. Walker Co. v. Cambria Corp.*, 159 P.3d 126, 132 (Colo. 2007) (Hobbs., J., dissenting) (citing *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994)).   The Eidelman Defendants' First Counterclaim alleges that Plaintiff fraudulently induced them into entering fifteen (15) Guaranty Agreements.   [#55-1 at 20].   Specifically, the Eidelman Defendants aver that Tatonka represented that the Guaranty Agreements covered only short-term advances and terminated upon satisfaction of those advances; that they relied on Plaintiff's representations; that their reliance was justifiable, because prior Guaranty Agreements terminated upon satisfaction of the short-term advances; and that now, Plaintiff attempts to hold them accountable for all of Mosaica's outstanding debt under the Revolver Commitment.  *See* [*id.* at ¶¶ 42.a–g, 43–46; *id.* at 20–21].

Plaintiff argues for dismissal of the Eidelman Defendants' fraudulent inducement counterclaim for two reasons.  First, the Colorado Credit Agreement Statute of Frauds bars this claim, because the Eidelman Defendants allege no writing signed by Plaintiff, which the statute requires.  [#57 at 6].  Second, the express terms of the Guaranty Agreements bar the Eidelman Defendants' reliance on any representations not contained in the agreements.  [*Id.* at 7].  Because Plaintiff's second argument warrants dismissal, this court focuses on it.[11]

---

[11] This court notes, however, that the Colorado Credit Agreement Statute of Frauds does bar fraudulent inducement claims involving or related to credit agreements over $25,000, unless the agreements are in writing and signed by the party to be charged.  *See Premier Farm Credit, PCA*, 155 P.3d at 515 ("Thus, defendants' fraudulent inducement claim is barred by the statute of frauds if it is an 'action or claim' relating to a covered credit agreement.").   Here, however, the

Plaintiff argues that the Eidelman Defendants fail to allege their justifiable reliance, because the express terms of the Guaranty Agreements preclude any reliance on representations not contained in the agreements.  [#57 at 7].  Specifically, sections 1, 8(f)(iv), and 18 all negate the Eidelman Defendants' reliance on any of Plaintiff's representations that the Guaranty Agreements covered only short-term advances.  [*Id.*].

"Under Colorado law, certain tort claims may be preempted by exculpatory contractual language," including fraud, if the contract contains a "non-reliance" provision.  *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1240 (D. Colo. 2010) (citing cases).  However, such language must be "couched in clear and specific language."  *Xedar Corp. v. Rakestraw*, No. 12–cv–01907–CMA–BNB, 2013 WL 93196, at *3 (D. Colo. Jan. 8, 2013) (citing *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 74 (Colo. 1991)).  In *Keller*, the Colorado Supreme Court considered whether the defendant manufacturer's sales contract that contained a provision disclaiming the buyer's reliance on any advertisements, brochures, written or oral statements concerning the defendant's product, barred the plaintiff's negligent misrepresentation claim.  819 P.2d at 74.  The court held that this language did not "clearly and specifically disclaim reliance" by the buyers on *all* representations made by the defendant prior to the execution of the sale's contract.  *Id.*

---

Guaranty Agreements constitute writings and Plaintiff produces two Guaranty Agreements signed by Tatonka's Chief Financial Officer, Jake Bauers.  *See* [#57-1; #57-2].  Further, nothing in the Colorado Credit Agreement Statute of Frauds indicates that the requisite writing must be contained in a single document.  *See PayoutOne v. Coral Mortg. Bankers*, 602 F. Supp. 2d 1219, 1225–26 (D. Colo. 2009) (citing *Bennett v. Moring*, 522 P.2d 741, 394 (Colo. App. 1974) (explaining that more than one writing may satisfy the statute of frauds if some nexus between the writings exists, which may be shown if the writings referred to the same subject matter or transaction)).  However, this does not affect this court's conclusion that the express terms of the Guaranty Agreements preclude the Eidelman Defendants' fraudulent inducement claim.

Similarly, a division of the Colorado Court of Appeals held that the general language of the three exculpatory clauses in a franchise agreement did not negate the plaintiffs' reasonable reliance on the defendant's non-disclosure of material facts under their fraudulent concealment claim. *Colo. Coffee Bean, LLC v. Peaberry Coffee, Inc.*, 251 P.3d 9, 21 (Colo. App. 2010). In *Colorado Coffee Bean*, the three exculpatory clauses provided: (1) that the plaintiff was not relying on any *promises* made by the defendant, not contained in the franchise agreement; (2) that the franchise agreement was the entire agreement between the parties, and that the defendant was not liable for any oral representations or commitments made prior to its execution, or for claims of negligent or fraudulent misrepresentation; and (3) that no statement, representation, act, event, or communication, not contained in the franchise agreement, was binding on the defendant. *Id.* at 21. The Court of Appeals held that clause 1 only covered promises, which the plaintiffs did not allege, that clause 2 (while broader than claim 1) did not preclude the plaintiffs' allegations that the defendant withheld material information, and that clause 3 prohibited reliance only on affirmative representations directed at prospective franchisees. *Id.*

Here, the three identified provisions of the Guaranty Agreements read, in relevant part:

**1.     Guaranty.** The Guarantor hereby, personally and unconditionally, (i) guarantees the due and punctual payment and performance of each of the Obligations of the Borrower [Mosaica] under the Loan Agreement [the Revolver Commitment] . . .

8.     **Representations and Warranties.** The Guarantor represents and warrants that: . . . (f) in executing and delivering this Guaranty, the Guarantor has . . . (iv) not relied and will not rely upon any representations or warranties of the Lender not embodied herein or any acts heretofore or hereafter taken by the Lender (including but not limited to any review by the Lender of the affairs of the Borrower) and no Lender or any other party has made any representation, warranty or statement to the Guarantor to induce the execution of this Guaranty; . . .

> 18.   **Integration; Effectiveness; Severability.**  This Guaranty, together with the other loan documents, reflects the entire understanding of the parties with respect to the transactions contemplated hereby and shall not be contradicted or qualified by any other agreement, oral or written, before the date hereof. . . .

[#57-2 at 2, 4–5, 8].  To start, the general integration clause reflected in section 18 is not "couched in clear and specific language" that would negate the Eidelman Defendants' justifiable reliance on Tatonka's representations that the Guaranty Agreements covered only short-term advances.  *See Steak n Shake Enters., Inc. v. Globex Co., LLC*, 110 F. Supp. 3d 1057, 1082 (D. Colo. 2015) (holding that a general integration clause does not bar claims for fraudulent misrepresentation).  In addition, section 1 does not reflect "clear and specific language" that precludes justifiable reliance on representations made outside the document.  In addition, the merits question of whether Defendants are personally liable for *all* of Mosaica's outstanding debts under the Revolver Commitment, based on the Guaranty Agreements, is not before this court.

The representations and warranties reflected in section 8(f)(iv), however, explicitly and unambiguously provide that the Guarantors (the Eidelman Defendants) have not and will not rely on *any* representations not contained in the Guaranty Agreements, and that no representations made by Plaintiff or any other party, induced the Eidelman Defendants into executing the Guaranty Agreements.  [#57-2 at 4–5].  Consequently, the representations relied on by the Eidelman Defendants for their fraudulent inducement counterclaim, *i.e.*, email correspondences with Tatonka's officers, are negated by the clear and specific language of section 8(f)(iv).  Further, at least one court in this District has held that similar language contained in a franchise agreement precluded a defendant's fraudulent inducement claim.  *See S*teak *n Shake Enters., Inc.*, 110 F. Supp. 3d at 1083 (holding that because the franchise agreement and related documents, signed by the defendant, contained integration and non-reliance clauses, "it [was]

simply unreasonable [for the defendants] to continue to rely on representations after stating in writing that [they were] not so relying."). Accordingly, this court respectfully RECOMMENDS that the Eidelman Defendants' fraudulent inducement counterclaim be DISMISSED for failure to allege justifiable reliance, given the clear and specific language of the non-reliance clause. *Cf. Shelter Mortg. Corp. v. Castle Mortg. Co., L.C.*, 117 F. App'x 6, 11 (10th Cir. 2004) (holding under Utah law that the written agreement at issue precluded any claim of reasonable reliance on oral representations, because the agreement contained an express disclaimer of reliance on *any* representations outside the written agreement).

### B.   Breach of Good Faith and Fair Dealing

Every contract under Colorado law contains an implied duty of good faith and fair dealing. *See Running Foxes Petroleum, Inc. v. Nighthawk Prod. LLC*, 175 F. Supp. 3d 1279, 1288 (D. Colo. 2016) (citing *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995)). Violation of this implied duty gives rise to a claim for breach of contract. *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006); *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462 (Colo. 2003) (explaining that in typical commercial contracts, breach of this duty gives rise to damages, not tort liability). "The doctrine exists to effectuate the parties' intentions and honor their reasonable expectations." *Newflower Market, Inc. v. Cook*, 229 P.3d 1058, 1064 (Colo. App. 2010). However, this duty cannot contradict the bargained for terms or conditions of the contract, nor does it require a party to accept material changes in the contract's terms or to assume obligations that vary the express terms of the contract. *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1104–05 (10th Cir. 2009) (quotations and citations omitted).

The Eidelman Defendants aver that Plaintiff breached this duty by misrepresenting that the Guaranty Agreements would terminate upon the satisfaction of the short-term advances,

while actually intending the agreements to obligate Defendants personally for all of Mosaica's debt under the Revolver Commitment. [#55-1 at 22 ¶ 14; *id.* at 23 ¶ 15]. Further, that Plaintiff breached this duty for many of the same reasons alleged by Defendant Connelly in his Second Counterclaim, *i.e.*, Tatonka's course of conduct with Mosaica caused damages to Mosaica and Defendants.

Plaintiff argues that the Eidelman Defendants' Second Counterclaim fails to state a claim, because the counterclaim contradicts the express provisions of the Guaranty Agreements, *i.e.*, that Defendants are personally liable for Mosaica's debt. [#57 at 10]. In addition, Plaintiff avers that the Eidelman Defendants are not the "real party in interest," because the basis of this counterclaim focuses on Tatonka's relationship with Mosaica, not Tatonka's conduct under the Guaranty Agreements. [*Id.* at 11]. For the following reasons, this court declines to dismiss this counterclaim at this juncture of the case.

Here, considering the Eidelman Defendants' Second Amended Answer as a whole, the Eidelman Defendants allege that their reasonable expectation was that the Guaranty Agreements terminated upon repayment of Tatonka's short-term advances. *See, e.g.*, [#55-1 at ¶¶ 15–32, 35, 42.a–g]. The Eidelman Defendants further contend that numerous oral and written correspondences reflect that the termination of the Guaranty Agreements was both the intent and expectation of Tatonka and Defendants. *See* [*id.* at ¶¶ 43–46; *id.* at 23 ¶ 13]. And, as discussed, although Plaintiff argues that the Guaranty Agreements render Defendants personally responsible for each of Mosaica's obligations under the Revolver Commitment, the merits of whether Defendants are personally liable for Mosaica's outstanding debt is not properly before this court at this phase. *Rader*, 2012 WL 4336175, at *6 (observing, "[w]hether the claim can ultimately survive scrutiny at the summary judgment stage is a matter the Court does not address at this

time.").   Thus, accepting the well-pled facts in the Eidelman Defendants' Second Amended

Answer as true and drawing all reasonable inferences in favor of the Eidelman Defendants, this

court concludes that the Eidelman Defendants sufficiently allege a breach of the duty of good

faith and fair dealing claim that does not seek to contradict the express terms of the Guaranty

Agreements.   *See Genova v. Banner Health*, 734 F.3d 1095, 1103 (10th Cir. 2012) (explaining

that the plaintiff cannot undo the bargained-for terms of the contract by alleging a breach of the

duty of good faith and fair dealing).   Accordingly, this court respectfully RECOMMENDS that

Plaintiff's Motion to Dismiss the Eidelmans' Amended Counterclaims be DENIED as to the

Second Counterclaim.

## III.   The Defendants' Jury Demand

In each respective Motion to Dismiss, Plaintiff also argues that Defendants' jury demands

contained in their counterclaims should be stricken under Rule 12(f) of the Federal Rules of Civil

Procedure.   *See* [#32; #57].   This is because each of the Guaranty Agreements—the bases of this

lawsuit—contain the same provision that expressly waives Defendants' right to a jury trial:

> THE GUARANTOR HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY
> IN ANY ACTION, PROCEEDING OR COUNTERCLAIM CONCERNING
> ANY RIGHTS UNDER THIS GUARANTY OR THE OTHER LOAN
> DOCUMENTS, OR UNDER ANY AMENDMENT, WAIVER, CONSENT,
> INSTRUMENT, DOCUMENT OR OTHER GUARANTY DELIVERED OR
> WHICH IN THE FUTURE MAY BE DELIVERED IN CONNECTION
> THEREWITH, OR ARISING FROM ANY FINANCING RELATIONSHIP
> EXISTING IN CONNECTION WITH THIS GUARANTY, AND AGREES
> THAT ANY SUCH ACTION, PROCEEDINGS (sic) OR COUNTERCLAIM
> SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. THE
> GUARANTOR CERTIFIES THAT NO OFFICER, REPRESENTATIVE,
> AGENT OR ATTORNEY OF THE LENDER OR ANY LENDER HAS
> REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER
> WOULD NOT, IN THE EVENT OF ANY ACTION, PROCEEDING OR
> COUNTERCLAIM, SEEK TO ENFORCE THE FOREGOING WAIVERS.
> GUARANTY (sic) HEREBY ACKNOWLEDGES THAT THIS PROVISION IS
> A MATERIAL INDUCEMENT FOR THE LENDER ENTERING INTO THE
> TRANSACTIONS CONTEMPLATED BY THE LOAN DOCUMENTS.

*See generally* [#32 at 6–7].

"The law is clear that the right to a jury trial can be contractually waived." *Cellport Sys., Inc. v. Peiker Acustic GmbH & Co. KG*, 847 F. Supp. 2d 1293, 1303 (D. Colo. 2012) (citing *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir.1988)).   Further, such an agreement is neither illegal nor contrary to public policy; however, the waiver must be knowing and intentional.   *Telum*, 859 F.2d at 837.

Courts in this District consider several factors in determining whether a contractual jury waiver is knowing and voluntary, including:  (1) the conspicuousness of the waiver; (2) the level of sophistication and experience of the contracting parties; (3) the negotiation of the contract's terms; (4) the relative bargaining power of the parties; and (5) whether counsel represented the waiving party.   *See, e.g.*, *Moreno v. Qwest Corp.*, No. 13–cv–00103–RM–MEH, 2013 WL 2444720, at *2 (D. Colo. Jun. 5, 2013) (citing cases).   Though these factors help guide the court's inquiry, the ultimate question becomes "whether, in light of all the circumstances, the Court finds the waiver to be unconscionable, contrary to public policy, or simply unfair." *Tara Woods Ltd. P'ship v. Fannie Mae*, No. 09–cv–00832–MSK–MEH, 2010 WL 1529459, at *2 (D. Colo. Apr. 1, 2010) (quoting *Allyn v. Western United Life Assurance Co.*, 347 F. Supp. 2d 1246, 1251–52 (M.D. Fla. 2004)).   The United States Court of Appeals for the Tenth Circuit has not specifically addressed which party bears the burden of proving that the waiver was knowing and voluntary; however, courts in this District place the burden on the party seeking to enforce the waiver.   *See, e.g.*, *Moreno*, 2013 WL 2444720, at *3; *Tara Woods Ltd. P'ship*, 2010 WL 1529459, at *2; *Timber Doodle Glade Equity Venture, LLC v. D.E. Shaw Laminar Lending, Inc.*, No. 06–cv–00799–WDM–CBS, 2007 WL 4287728, at *2 (D. Colo. Dec. 4, 2007).

Here, Plaintiff argues that Defendants knowingly and voluntarily waived their right to trial.  First, the jury waiver provision is conspicuous, as it is the only provision in the Guaranty Agreements that is capitalized in its entirety.  [#44 at 8; #60 at 14].  Second, Defendant Connelly is a sophisticated and experienced businessperson who has a law degree and previously practiced law as a licensed attorney; however, Plaintiff argues, there is "no evidence as to the level of sophistication and experience of the Eidelmans," rendering this factor neutral.  [#44 at 5–6; #41 at 2 n.1; #60 at 14].  Third, Plaintiff avers that there is no evidence that either Defendant Connelly or the Eidelman Defendants attempted to negotiate the terms of the Guaranty Agreements; however, Defendants were free to reject the Guaranty Agreements.  *See* [#44 at 9; #60 at 14].  Fourth, Plaintiff contends that there is no evidence as to whether Defendant Connelly or the Eidelman Defendants retained counsel prior to signing the Guaranty Agreement, but that there is also no evidence suggesting they were prohibited from doing so, rendering this factor neutral.  [#44 at 9; #60 at 14].  Finally, Plaintiff alleges that there is no evidence of gross disparity of relative bargaining power.  [#44 at 9; #60 at 14].

Defendant Connelly responds that Plaintiff has not met its burden of proving that the waiver was knowing and voluntary or, alternatively, if Plaintiff has met its burden, the waiver does not apply to his counterclaims.  [#41 at 8–9].  The Eidelman Defendants argue that Plaintiff's motion to strike asks the court to find all jury waiver provisions enforceable in every case.  [#58 at 22].  Further, the Eidelman Defendants contend that it is too early in this proceeding to determine whether striking the Eidelman Defendants' jury demand is proper, as Plaintiff can renew its motion once the record is better developed.[12]  [#58 at 23].

---

[12] To the extent the Eidelman Defendants argue against striking their jury demand on the basis of their First Counterclaim for fraudulent inducement as to the Guaranty Agreements, the Tenth Circuit has held that fraud in the inducement as to the contract as a whole will not invalidate a

While the record as it currently stands suggests waiver of a jury trial by the Defendants, this court concludes that the better course of action is to defer ruling on this issue until a better factual record is developed.  This is not a case where trial by jury is precluded by statute or by the type of action and, therefore, can readily be determined on the papers.  Rather, the factors considered by courts in this Circuit as to whether a jury trial has been knowingly and voluntarily waived, and that such waiver is not unconscionable, contrary to public policy, or unfair to Defendants, *see Allyn*, 347 F. Supp. 2d at 1251–52, include fact-based inquiries that are better resolved after at least some discovery, particularly given the nature of Defendants' defenses and counterclaims.  In addition, deferring resolution of the jury trial question does not necessitate any significantly broader or different discovery and, accordingly, should not have a materially adverse impact on the pretrial proceedings.  Therefore, this court respectfully RECOMMENDS that Plaintiff's request to strike Defendants' jury demands be DENIED, with leave to refile at a later time, if appropriate.

## CONCLUSION

For the reasons stated herein, this court respectfully **RECOMMENDS**:

(1)    Plaintiff's Motion to Dismiss Connelly's Counterclaims [#32] be **GRANTED IN PART** and **DENIED IN PART**;

(2)    Defendant Connelly's First and Third Counterclaims be **DISMISSED without prejudice**;

(3)    Plaintiff's Motion for a More Definite Statement as to Defendant Connelly's Second Counterclaim be **DENIED**, and Defendant Connelly's Second Counterclaim **REMAIN**;

---

jury waiver provision; fraud in the inducement must be shown specifically to the jury waiver provision. *Telum*, 859 F.2d at 837–38.

(4)     Plaintiff's Motion to Dismiss Eidelmans' Amended Counterclaims [#57] be

**GRANTED IN PART and DENIED IN PART**;

(5)     The Eidelman Defendants' First Counterclaim be **DISMISSED**, and their Second

Counterclaim **REMAIN**; and

(6)     Plaintiff's requests to strike the jury demands by Defendants be **DENIED**

**without prejudice**, with leave to refile at a later time; and

(7)     Plaintiff's Motion to Dismiss Defendant Eidelmans' Counterclaims and Motion to

Strike Jury Demand [#47] be **DENIED AS MOOT.** [13]


Dated:  December 29, 2016                          BY THE COURT:

                                                                    s/Nina Y. Wang_____
                                                                    United States Magistrate Judge

---

[13] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).