**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  16-CV-01141-MSK-NYW

TATONKA CAPITAL CORPORATION, a Colorado corporation,

     Plaintiff,

v.

MICHAEL CONNELLY, DAWN EIDELMAN and GENE EIDELMAN,

     Defendants.

---

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST DEFENDANTS MICHAEL CONNELLY AND GENE EIDELMAN[1]**

---

     Plaintiff, TATONKA CAPITAL CORPORATION ("Tatonka"), moves for summary judgment on its claim against Defendants Michael Connelly and Gene Eidelman and on those Defendants' counterclaims.[2]

---

[1] According to the Notice of Chapter 7 Bankruptcy Case received by the undersigned, on July 31, 2017, Defendant Dawn Eidelman (only) filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia (Case. No. 17-63244-bem).  As a result of the automatic stay, Plaintiff takes no further action in this case against Defendant Dawn Eidelman.

[2] Pursuant to the Order dated March 3, 2017 (Dkt. 69), Defendant Connelly's first counterclaim and third counterclaim were dismissed and the Eidelman Defendants' first counterclaim was dismissed.  Therefore, the only counterclaims remaining to be addressed are Defendant Connelly's second counterclaim and Defendant Gene Eidelman's second counterclaim.

## CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT

**A.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS SOLE CLAIM FOR BREACH OF THE GUARANTY AGREEMENTS**

### 1.    Burden of proof and elements

Plaintiff's sole claim is for breach of the Guaranty Agreements.  This is a claim for breach of contract which requires the Plaintiff to establish, by a preponderance of the evidence, a *prima facie* case that: (i) Defendants Connelly and Gene Eidelman entered into the Guaranty Agreements which are the subject of this case; (ii) performance of the Guaranty Agreements by Tatonka; (iii) Defendants Connelly and Gene Eidelman have failed to pay to Plaintiff the unpaid amounts that they guaranteed; and (iv) resulting damages to Tatonka.  *E.g.*, *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

### 2.    Undisputed Facts

#### a.    Revolver Loan and Guaranty Agreements

**Undisputed Fact 1:**  At all material times, Defendant Connelly was the Chief Executive Officer and a Director of Mosaica Education, Inc., a Delaware corporation (hereinafter referred to as "Mosaica") and Defendant Gene Eidelman was Mosaica's President.  *Connelly Deposition Excerpts*, Exhibit 42, at Page 6, Lines 19-21, and Page 7, Lines 6-20; *Gene Eidelman Deposition Excerpts*, Exhibit 43, at Page 14, Lines 5-24.

**Undisputed Fact 2:**  On or about October 30, 2007, Tatonka and Mosaica entered into a contract titled "Revolver Loan and Security Agreement" (hereinafter referred to as "the Revolver Loan"), pursuant to which Tatonka committed to loan

2

up to $10,000,000 to Mosaica.  *Hansen Declaration*, Exhibit 1, at ¶ 2 and *Revolver Loan and Security Agreement* and *Revolver Promissory Note*, Exhibits 2 and 3.[3]

**Undisputed Fact 3:**  In 2013, in conjunction with certain "Loan Modification Agreements", Defendant Connelly signed and delivered to Tatonka six (6) separate Guaranty Agreements and Defendant Gene Eidelman signed and delivered to Tatonka seven (7) separate Guaranty Agreements.  Tatonka fully performed its obligations pursuant to each of the Guaranty Agreements by advancing additional funds to Mosaica.   Exhibit 1, at ¶ 3 and *Guaranty Agreements*, Exhibits 4 through 16.

**Undisputed Fact 4:**  Each of the Guaranty Agreements states:

> The Guarantor hereby, personally and unconditionally, (i) guarantees the due and punctual payment and performance of each of the Obligations of the Borrower under the Loan Agreement (the "Guaranteed Obligations") and (ii) agrees to indemnify, reimburse, and hold the Lender harmless from, any actual liability, loss, damage, cost or expense (including but not limited to reasonable attorneys' fees and expenses) suffered or incurred by the Lender (including any reasonable attorneys' fees and expenses of enforcing this Guaranty) (collectively "Liabilities") resulting from, arising in connection with, or related to the transactions contemplated by the Loan Agreement.

Each of the Guaranty Agreements defines the "Loan Agreement" as the Revolver Loan, the "Borrower" as Mosaica, and the "Lender" as Tatonka.  The definition of

---

[3] The amount to be loaned under the Revolver Loan varied pursuant to a series of "Loan Modification Agreements", however the amounts stated in those Agreements is rendered irrelevant for purposes of the analysis required here due to the Definitions contained in the pertinent documents.

"Obligations" in the Guaranty Agreements is expressly incorporated from the Loan Agreement: "all obligations now or hereafter owed to Tatonka … by any Mosaica Party whether related or unrelated to the Revolver Loans, this Agreement, or the Loan Documents…."  Exhibits 4 through 16 at Initial Paragraph and ¶ 1 and Exhibit 2 at page 10.[4]

**Undisputed Fact 5:**  The only limitation contained in each of the Guaranty Agreements is a stated dollar amount "arising under this Guaranty".  (Emphasis added).  Exhibit 1, at ¶ 4 and *Guaranty Agreements*, Exhibits 4 through 16 at ¶ 2.

**Undisputed Fact 6:**  The six (6) separate amounts guaranteed in the six (6) separate Guaranty Agreements signed by Defendant Connelly total $3,869,000 and the seven (7) separate amounts guaranteed in the seven (7) separate Guaranty Agreements signed by Defendant Gene Eidelman total $4,545,000. Exhibit 1, at ¶ 5, *Guaranty Agreements*, Exhibits 4 through 16 at ¶ 2 and *Summary of Guaranty Agreements*, Exhibit 17.

**Undisputed Fact 7:**  In late 2013, Mosaica defaulted on its obligations to Tatonka pursuant to the Revolver Loan.  Exhibit 1, at ¶ 6.

**Undisputed Fact 8:**   In April 2014, in at least five separate written agreements, each of which is titled "Assignment and Agreement" and each of which was entered into by Mosaica (as Assignor), other entities owned by Mosaica

---

[4] The definition of "Obligations" thus expands the amounts that are guaranteed from the dollar figure stated in the Revolver Loan (as modified by the Loan Modification Agreements) to all obligations owed to Tatonka by Mosaica.

(as Guarantors), and Tatonka (as Assignee), Mosaica "acknowledged and agreed"

as follows:

> (d)     Neither Assignor [Mosaica] nor any of the Guarantors has any claims, counterclaims, defenses, or set-offs against Assignor [*sic*] [Tatonka] with respect to the Indebtedness and the Loan Documents, and to the extent any such set-offs, claims, counterclaims or defenses exist, the same are hereby waived and released in consideration of Assignee [Tatonka] entering into this Assignment.

> (e)     In consideration of Assignee [Tatonka] entering into this Assignment, and without any contingency, precondition, or condition subsequent, each of Assignor [Mosaica] and Guarantors, for itself and any successors and assigns, does hereby jointly and severally fully and forever release, relinquish, discharge, settle and compromise any and all claims, cross-claims, counterclaims, causes, damages and actions of every kind and character, and all suits, costs, damages, expenses, compensation and liabilities of every kind, character and description, whether direct or indirect, known or unknown, disclosed or hidden, in law or in equity, which any of them had or will have against Assignee [Tatonka], and/or any of its agents, representatives, officers, professionals, employees or contractors on account of, arising, or resulting from, or in any manner incidental to, any and every thing or event occurring or failing to occur at any time in the past up to and including the date hereof, including, without limitation, any claims relating to the Indebtedness, the Loan Documents, and any act or event relating to the Assignee's [Tatonka's] administration of the Indebtedness, this Assignment or any other transaction contemplated by this Assignment.

*Connelly Deposition Excerpts*, Exhibit 42, at Page 52, Line 4 through Page 56,

Line 5, and Exhibits 38 through 42 (Deposition Exhibits 24 through 28).

b.    **The Receivership Case**

**Undisputed Fact 9:**   On September 19, 2014, Tatonka filed a lawsuit against Mosaica in the United States District Court for the Northern District of Georgia, Case No. 1:14-cv-03017-TCB, for breach of contract and for the appointment of a Receiver ("the Receivership Case").   Subject matter jurisdiction of the Federal Court in Georgia in the Receivership Case was based on diversity. Exhibit 1, at ¶ 7 and *Complaint* (Dkt. 1), Exhibit 18 at ¶¶ 1-10.[5]

**Undisputed Fact 10:**   After a Receiver was appointed, and after the sale of all of Mosaica's assets, on December 11, 2015, Judgment was entered in the Receivership Case in favor of Tatonka and against Mosaica, in the amount of $5,068,480.22, plus interest at 18% per annum.   Exhibit 1, at ¶ 8 and *Findings of Fact and Conclusions of Law* (Dkt. 199), Exhibit 19, *Order and Final Judgment Approving Sale of Substantially All Receivership Assets to Tatonka* (Dkt. 200), Exhibit 20, *Unopposed Motion for Entry of Judgment* (Dkt. 235), Exhibit 21, and *Final Judgment* (Dkt. 238), Exhibit 22.

**Undisputed Fact 11:**   The Court in the Receivership Case expressly granted standing to Defendants Connelly and Gene Eidelman, as shareholders of Mosaica, to assert and prosecute "defenses and claims against Tatonka" on behalf

---

[5] This Court may take judicial notice of the Court file in the Receivership Case.  *Horton v. Davis*, Civil Action No. 13-cv-01089-REB-NYW, 2015 WL 7294815 (D.Colo. Nov. 19, 2015), citing *Hansen v. Harper Excavating, Inc.,* 641 F.3d 1216, 1219 n.2 (10th Cir. 2011), and *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).  *Accord, Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 n.2 (10th Cir. 2014); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979).

of Mosaica in the Receivership case.   Exhibit 1, at ¶ 9 and *Order Appointing Receiver*, ¶ 1 (Dkt. 28), Exhibit 23.

**Undisputed Fact 12:**   Defendants Connelly and Gene Eidelman fully exercised the right granted to them by the Receivership Court and filed in the Receivership Case, among other things: *Answer and Counterclaims* against Tatonka (Dkt. 167), Exhibit 24, and *Amended Answer and Counterclaims* against Tatonka (Dkt. 217), Exhibit 25; *Shareholders' Brief Regarding Distribution of Proceeds of Sale of Columbus Property* (Dkt. 174), Exhibit 26; *Shareholders' Objection to Receiver's Supplemental Motion to Approve Proposed Sale* (Dkt. 189), Exhibit 27; and *Shareholders' Motion to Alter or Amend Judgment or for Reconsideration* (Dkt. 205), Exhibit 28. Exhibit 1, at ¶ 10, and Exhibits 24, 25, 26, 27 and 28.

**Undisputed Fact 13:**  The Court in the Receivership Case fully addressed <u>all</u> of the issues raised by Defendants Connelly and Gene Eidelman  ("the Shareholders") in the following Orders: *Order* filed August 24, 2015 (Dkt. 216), Exhibit 29, which addressed the Shareholders' original counterclaims against Tatonka (Dkt. 167) as well as their Motion for Reconsideration (Dkt. 205); *Order* filed May 14, 2015 (Dkt. 179), Exhibit 30, which addressed the Shareholders' arguments in regard to the distribution of proceeds of the sale of Columbus property (Dkt. 174); *Findings of Fact and Conclusions of Law* (Dkt. 199), Exhibit 19, and *Order and Final Judgment Approving Sale of Substantially All Receivership Assets to Tatonka* (Dkt. 200), Exhibit 20, which addressed the

Shareholders' Objections to Receiver's Supplemental Motion to Approve Proposed Sale (Dkt. 189); and the *Order* filed November 12, 2015 (Dkt. 228), Exhibit 31, which dismissed the Shareholders' Amended Counterclaims against Tatonka (Dkt. 217).  Exhibit 1, at ¶ 11 and Exhibits 19, 20, 29, 30 and 31.

**Undisputed Fact 14:**  The Shareholders' Amended Counterclaims against Tatonka (Dkt. 217) alleged that Tatonka: breached the implied covenant of good faith and fair dealing in several contracts with Mosaica; tortiously interfered with Mosaica's business relationships and converted Mosaica's funds; and overstated the amount it claimed was owed by Mosaica.  Exhibit 1, at ¶ 10 and Exhibit 25.

**Undisputed Fact 15:**   On November 12, 2015, the Court in the Receivership Case dismissed the Shareholders' Amended Counterclaims.  Exhibit 1, at ¶ 11 and *Order* filed November 12, 2015 (Dkt. 228), Exhibit 31.

**Undisputed Fact 16:**  In its *Findings of Fact and Conclusions of Law* at ¶36(x) (Dkt. 199), the Court in the Receivership Case found that, as of March 31, 2015, the total amount due and owing from Mosaica to Tatonka was $22,999,855.37, plus additional interest and legal fees accruing thereafter.  Exhibit 19.  In reaching that conclusion, the Court in the Receivership Case made the following express findings (among others):

> 58.   The property has been adequately marketed by experienced professionals.

> 59.   The Tatonka Credit Bid for the Purchased Assets (a subset of the Property), constitutes the highest and best offer for the Purchased Assets.

61.   A full and fair hearing on the Initial Sale Motion was held, in which CXA, on behalf of itself and other similarly situated junior lienholders and unsecured creditors, and the Shareholders [defined on Page 3 of the document as Defendants Connelly and Gene Eidelman], on behalf of themselves and other similarly situated shareholders, fully participated and contested the proposed sale to Pansophic.

63.   The sale of the Purchased Assets to Tatonka reasonably consistent with the Tatonka Credit Bid is in the best interest of the receivership estate, the creditors of the Companies, the employees of Mosaica, the teachers and students at the schools managed by Mosaica, and other parties in interest.

65.   The Authorized Sales will maximize both (a) the financial recovery to the Companies' creditors and (b) the continuation of appropriate and quality educational services at the schools currently managed by Mosaica.

67.   The terms of the Authorized Sales have been negotiated in good faith, at arms lengths [*sic*] and without any collusion or undue influence.

69.   The terms of the Authorized Sales are fair and reasonable under the circumstances and reflect the Receiver's prudent and informed business judgment.

71.   The claimed lien and indebtedness amounts, positions, and priorities each of Tatonka, CXA, and EPT discussed above are fully supported by the evidence and each is entitled to its collateral and/or the net sales proceeds realized on the sale of its collateral.

Exhibit 19.  The Court in the Receivership Case also found:

13.   The sale of the Purchased Assets was proposed and negotiated in good faith.  The transactions

9

> contemplated by the Second Sale Motion are undertaken in good faith.  The consideration provided by Tatonka is fair and reasonable and is the best offer for the Purchased Assets.

Exhibit 20.

### c.  Remaining Unpaid Amount

**Undisputed Fact 17:**  As of August 31, 2017, Mosaica continues to owe to Tatonka $4,734,917.05, plus additional interest and attorneys' fees and costs. Exhibit 1, at ¶ 12 and *Plaintiff's Disclosures Pursuant to Fed. R. Civ. P. 26(a)(2)(A) and (C) and Exhibits A, B, C and D* thereto, Exhibits 32 through 36 and 44.

**Undisputed Fact 18:**  Defendants have failed to pay to Tatonka any of the $4,734,917.05, plus additional interest and attorneys' fees and costs, owed to Tatonka by Mosaica.  Exhibit 1, at ¶ 13.

### 3.  Legal Argument

It is undisputed that Defendants Connelly and Gene Eidelman entered into the Guaranty Agreements and that Tatonka fully performed its obligations pursuant to each of the Guaranty Agreements.  **Undisputed Fact 3**.  It is also undisputed that Defendants Connelly and Gene Eidelman have failed to pay to Plaintiff the unpaid amounts that they guaranteed.  **Undisputed Fact 18**.

### a.  Claim Preclusion and/or Issue Preclusion Prohibit Defendants Connelly and Gene Eidelman from Contesting the Amount Owed by Mosaica to Tatonka

As a result of claim preclusion (res judicata) and/or issue preclusion (collateral estoppel), Defendants Connelly and Gene Eidelman are unable to contest the amount determined by the Court in the Receivership Case to be owing by Mosaica to Tatonka.

In *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001), the Supreme Court held that "federal common law governs the claim-preclusive effect of a [judgment] by a federal court sitting in diversity" and that the federal common law rule in such a case is to apply "the law that would be applied by state courts in the State in which the federal diversity court sits." *Accord*, *Sheldon v. Khanal*, 502 Fed.Appx. 765, 771 (10th Cir. 2012); *Matosantos Commercial Corp. v. Applebee's International, Inc.*, 245 F.3d 1203, 1207-08 (10th Cir. 2001).   Because subject matter jurisdiction of the Federal Court in Georgia in the Receivership Case was based on diversity, **Undisputed Fact 9**, the claim-preclusive effect of the Judgment of the Court in the Receivership Case is to be determined by Georgia state law.   *Accord*, *CSX Transportation, Inc. v. General Mills, Inc*, 846 F.3d 1333, 1340 (11th Cir. 2017) ("federal common law borrows the state rule of collateral estoppel to determine the preclusive effect of a federal judgment where the court exercised diversity jurisdiction").

Pursuant to Georgia state law:

> [T]he doctrine [of res judicata] provides that the judgment of a court competent to render it is conclusive as to the same parties and their privies and in regard to all matters actually put in issue or which might have been lawfully put in issue in the action in which the judgment was rendered. OCGA § 9–12–40. The purpose of res judicata is to "[prevent] the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action." *Body of Christ Overcoming Church of God v. Brinson,* 287 Ga. 485, 486, 696 S.E.2d 667 (2010), quoting *Karan v. Auto–Owners Ins.,* 280 Ga. 545, 546, 629 S.E.2d 260 (2006). As OCGA § 9–12–40 reflects, there are three requirements which must be satisfied in order for res judicata to apply: there must be identity of the cause of action, identity of the parties or their privies, and previous adjudication on the merits by a court of competent

> jurisdiction. *Church of God v. Brinson,* supra at 486, 696
> S.E.2d 667, quoting *Karan v. Auto–Owners Ins.,* supra at 546,
> 629 S.E.2d 260. It is axiomatic that the party against whom
> the doctrine of res judicata is raised as a bar to the
> subsequent suit must have had a full and fair opportunity to
> litigate the issues in the first action. *Fowler v. Vineyard,* 261
> Ga. 454, 456(1), 405 S.E.2d 678 (1991).

*Bostick v. CMM Properties, Inc.*, 772 S.E.2d 671, 673 (Ga. 2015).

1. As to the first element, identity of the cause of action, Georgia state law provides that "[a] cause of action has been deemed to be 'the entire set of facts which give rise to an enforceable claim.'" *Lilly v. Heard*, 761 S.E.2d 46, 50 (Ga. 2014), quoting *Crowe v. Elder*, 723 S.E.2d 428, 430 (Ga. 2012).[6] Tatonka's breach of contract claim in the Receivership Case was to determine the amount owed by Mosaica to Tatonka, and was based on the same facts as Tatonka's claim in this case to enforce Defendants' personal guarantees of that same amount. **Undisputed Facts 9, 10 and 16**.

Collateral estoppel also prevents Defendants Connelly and Gene Eidelman from contesting the amount determined by the Court in the Receivership Case to be owed by Mosaica to Tatonka. Pursuant to Georgia state law, the primary difference from res judicata is that collateral estoppel does not require identity of the claim, so long as the issue was determined in the previous action. *Body of Christ Overcoming Church of God, Inc. v. Brinson*, 696 S.E.2d 667, 669 (Ga. 2010), quoting *Karan, Inc. v. Auto-Owners Ins.*

---

[6] In *Hernandez v. Asset Acceptance, LLC*, 970 F.Supp.2d 1194, 1197-98 (D. Colo. 2013) (Krieger, C.J.), this Court similarly held that "identity of the cause of action" for purposes of claim preclusion means "the claims arise out of the same transaction, or series of connected transactions."

*Co.*, 629 S.E.2d 260, 262 (Ga. 2006).[7]  It is undisputed that the Court in the Receivership

Case determined the amount owed by Mosaica to Tatonka which is the same issue to be

determined in this case, the purpose of which is to enforce the personal guarantees of

that same amount.  **Undisputed Facts 2-7 and 9-16**.

2.      The second element of both res judicata and collateral estoppel requires

identical parties or their privies.  This element is met because, although Defendants

Connelly and Gene Eidelman were not named parties in the Receivership Case, they

were Mosaica's privies and they were expressly allowed by the Court in the Receivership

Case to participate directly in that litigation for themselves and similarly situated

shareholders, which they did.

Pursuant to Georgia law, "[a] privy is generally defined as 'one who is represented

at trial and who is in law so connected with a party to the judgment as to have such an

identity of interest that the party to the judgment represented the same legal right.'"  *Lilly*

*v. Heard*, 761 S.E.2d at 50, quoting *Brown & Williamson Tobacco Corp. v. Gault*, 627

S.E.2d 549, 551 (Ga. 2006).  The Georgia Supreme Court has recognized that a

corporation and its directors are privies.  *Body of Christ Overcoming Church of God, Inc.*

*v. Brinson*, 696 S.E.2d at 669, citing *QOS Networks, Ltd. v. Warburg, Pincus & Co.*, 669

---

[7] Collateral estoppel pursuant to Colorado law has, in effect, the same elements:  the issue precluded was actually litigated and necessarily determined in the prior proceeding; the party against whom estoppel is sought was a party or in privity with a party to the prior proceeding; there was a final judgment on the merits; and the party against whom estoppel is sought had a full and fair opportunity to litigate the issues.  *Nichols v. Bd. of County Com'rs of County of La Plata, Colorado*, 506 F.3d 962, 967 (10th Cir. 2007), quoting *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999).

S.E.2d 536, 540 (Ga. App. 2008) ("Management Shareholders" are privies with corporation).   The Georgia Court of Appeals has applied the same reasoning to guarantors, shareholders and officers.  *Coffee Iron Works v. QORE, Inc.*, 744 S.E.2d 114, 118-19 (Ga. App. 2013); *Donalson v. Coca-Cola Co.*, 298 S.E.2d 25, 28 (Ga. App. 1982).

Many courts in other jurisdictions have also held that corporations and their officers, directors and guarantors are privies.  *E.g.*, *Virnich v. Vorwald*, 664 F.3d 206, 216 (7th Cir. 2012) (shareholder who participated in receivership case was in privity with corporation); *Fox v. Maulding*, 112 F.3d 453, 459-60 (10th Cir. 1997), quoting *Lowell Staats Mining Co., Inc. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1277 (10th Cir. 1989) ("[a] director's close relationship with the corporation will generally establish privity"); *Belmont Realty Corp. v. Bogosian*, 11 F.3d 1092, 1097 (1st Cir. 1993) (corporate officer who participated in corporation obtaining underlying loan and who guaranteed the loan was corporation's privy); *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 870 (5th Cir. 1984) (guarantor who was president and stockholder was corporation's privy); *Continental Illinois Nat'l Bk. & T. Co. of Chicago v. Windham*, 668 F.Supp. 578, 583 (E.D. Tex. 1987) (guarantor who was president, director and shareholder is in privity with corporate principal for purposes of res judicata); *Walter E. Heller & Co., Inc. v. Cox*, 343 F.Supp. 519, 524-25 (S.D.N.Y. 1972), *aff'd* 486 F.2d 1398 (2d Cir.), *cert. denied*, 414 U.S. 827 (1973) ("a guarantor is bound by a prior adjudication involving the principal debtor if the guarantor had notice of and an opportunity to participate in the prior proceeding."); *Bunnett v. Smallwood*, 768 P.2d 736, 740 (Colo. App. 1988), *rev'd on other grounds* 793 P.2d 157 (Colo. 1990) (guarantor who was corporate president, director and

stockholder was privy); *Bartle v. Health Quest Realty VII*, 768 N.E.2d 912, 920-21 (Ind. App. 2002) (guarantor was privy of limited partnership which he controlled); *Specialty Restaurants Corp. v. Barry*, 653 N.Y.S.2d 972 (App. Div. 1997) (guarantor who was also president, director and shareholder of corporation was privy).

At all material times, Defendant Connelly was the Chief Executive Officer and a Director of Mosaica and Defendant Gene Eidelman was Mosaica's President. **Undisputed Fact 1**.  In addition, the Court in the Receivership Case expressly granted standing to Defendants Connelly and Gene Eidelman, as shareholders of Mosaica, for themselves and similarly situated shareholders, to assert and prosecute "defenses and claims against Tatonka" on behalf of Mosaica in the Receivership Case.  **Undisputed Fact 11**.  Defendants Connelly and Gene Eidelman fully exercised the right granted to them by the Receivership Court and the Court in the Receivership Case fully addressed all of the issues raised by Defendants Connelly and Gene Eidelman.  **Undisputed Facts 12 and 13**.  Under these circumstances, the requirement that Defendants Connelly and Eidelman be privies of Mosaica is met.

3.      The third element is that there must have been a final adjudication on the merits.  It cannot be disputed that the Court in the Receivership Case finally determined the amount owed by Mosaica to Tatonka on the merits.  **Undisputed Facts 9-16**.

4.      Finally, as explained above and as shown by their filings in the Receivership Case, Defendants Connelly and Gene Eidelman had a full and fair opportunity in the Receivership Case to litigate the amount owed by Mosaica to Tatonka.  **Undisputed Facts 9-16**.

### b.   Independent Determination of Amount Owed to Tatonka

In the alternative, and independent of the Receivership Case, it is undisputed that, as of August 31, 2017, Mosaica continues to owe to Tatonka $4,734,917.05, plus additional interest and attorneys' fees and costs.  **Undisputed Fact 17**.

### c.   Defendants Have Failed to Pay

It is undisputed that Defendants have failed to pay to Tatonka any of the $4,734,917.05, plus additional interest and attorneys' fees and costs, owed by Mosaica to Tatonka as required by the Guaranty Agreements.  **Undisputed Fact 18**.

### 4.   Defendants' Affirmative Defenses

Defendants have the burden of proof on each of their affirmative defenses.

### a.   Affirmative Defenses Common to Defendants Connelly and Gene Eidelman

i.   Failure to state a claim upon which relief can be granted [Dkt. 21, ¶18 and Dkt. 55-1, ¶13]

There is no basis whatsoever for this defense.  Tatonka's sole claim, for breach of the Guaranty Agreements, alleges that Defendants Connelly and Gene Eidelman entered into the Guaranty Agreements and that they have breached the Guaranty Agreements by failing to pay to Tatonka the amounts owed to Tatonka by Mosaica which they guaranteed.  Tatonka has stated an entirely plausible claim against Defendants Connelly and Gene Eidelman.

ii.     <u>Mosaica's obligations that were guaranteed were satisfied in full and the Guaranty Agreements were terminated [Dkt. 21, ¶¶19 & 21 and and Dkt. 55-1, ¶¶ 14-31 and 39]</u>

These defenses are based on the theory that the Guaranty Agreements were limited to certain "short-term advances" made by Tatonka to Mosaica.  (Dkt. 21, ¶ 21).  This defense fails because it is based on alleged representations that are <u>not</u> in the Guaranty Agreements and the unambiguous language of the written Guaranty Agreements precludes reliance on any such representations.

In its dismissal of the Eidelman Defendants' First Counterclaim (for fraudulent inducement), this Court held that Section 8(f)(iv) of each Guaranty Agreement "explicitly and unambiguously provide[s] that the Guarantors … have not and will not rely on any representations not contained in the Guaranty Agreements, and that no representations made by Plaintiff or any other party, induced the … Defendants into executing the Guaranty Agreements."  Recommendation of United States Magistrate Judge (Dkt. 68), filed December 29, 2016, at page 20 (adopted by the Order entered March 3, 2017 (Dkt. 69)).   Just as this Court concluded that the Guarantors cannot rely on alleged representations outside of the Guaranty Agreements because they are "negated by the clear and specific language of section 8(f)(iv)", *id.*, this affirmative defense fails because it is based on alleged reliance on those same alleged representations.

iii.     <u>Estoppel and Laches [Dkt. 21, ¶¶ 20 & 24 and Dkt. 55-1, ¶¶ 32 & 33]</u>

Defendants' "estoppel" defense is based on the unsupported allegation that "Tatonka, acting through its officers and employees, repeatedly admitted and confirmed that all obligations allegedly guaranteed by defendants were satisfied in full and that the

guarantees were terminated and revoked." There is no admissible evidence that Tatonka did so or that Defendants Connelly or Gene Eidelman reasonably relied on any such statements to their detriment.

The elements that must be established to support a claim of equitable estoppel are that the party to be estopped must know the facts and either intend the conduct to be acted on or so act that the party asserting estoppel must be ignorant of the true facts, and the party asserting estoppel must reasonably rely on the other party's conduct with resultant injury. *E.g.*, *Committee for Better Health Care for All Colorado Citizens v. Meyer*, 830 P.2d 884, 891-92 (Colo. 1992). Defendants Connelly and Gene Eidelman cannot meet their burden of proof as to <u>any</u> of these necessary elements. This defense is based on an email sent by Eric Gorka on July 28, <u>2014</u> (almost a year <u>after</u> the last of the Guaranty Agreements), but the email was qualified and there were no additional or follow-up communications in regard to the Guaranty Agreements which in fact had not been satisfied. In addition, pursuant to *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 522 (Colo. App. 2006), the estoppel defense is barred by the Colorado Credit Agreement Statute of Frauds, C.R.S. § 38-10-124.

**"**The elements of laches in Colorado are: '(1) full knowledge of the facts; (2) unreasonable delay in the assertion of available remedy; and (3) intervening reliance by and prejudice to another.'" *Grynberg v. Total, S.A.*, 538 F.3d 1336, 1353 (10th Cir. 2008), quoting *Manor Vail Condo. Ass'n v. Vail*, 604 P.2d 1168, 1170 (Colo. 1980). Tatonka has asserted its claims in this case well within the applicable six year statute of limitations, C.R.S. § 13-80-103.5(1)(a), and there is no admissible evidence that Tatonka delayed

unreasonably or that Defendant Connelly or Gene Eidelman were prejudiced by any such delay.

    iv.    <u>Tatonka acted improperly in regard to Mosaica and Tatonka has overstated the amount owed by Mosaica [Dkt. 21, ¶¶22 & 25 and Dkt. 55-1, ¶¶ 36 & 37]</u>

These defenses are barred by res judicata (claim preclusion) and/or collateral estoppel (issue preclusion). The elements of both of these doctrines pursuant to applicable Georgia state law are fully explained above.

The Court in the Receivership Case expressly granted standing to Defendants Connelly and Gene Eidelman, as shareholders of Mosaica, to assert and prosecute "defenses and claims against Tatonka" on behalf of Mosiaca. **Undisputed Fact 11**. Defendants Connelly and Gene Eidelman fully exercised the right granted to them. **Undisputed Fact 12**. The Court in the Receivership Case fully addressed <u>all</u> of the issues raised by Defendants Connelly and Gene Eidelman.[8] **Undisputed Fact 13**. In doing so, the Court in the Receivership Case considered and rejected the Shareholders' claims that Tatonka acted improperly in regard to Mosaica. **Undisputed Facts 14, 15**

---

[8] In its Order dismissing the Shareholders' Amended Counterclaims against Tatonka, the Court in the Receivership Case noted that Messrs. Connelly and Eidelman had failed to respond to the motion to dismiss "which is therefore deemed unopposed and due to be granted for that reason alone." The Court in the Receivership Case, however, went on to state: "Moreover, the Court has reviewed the merits of the motion and finds the arguments therein well-taken." Exhibit 31 at Page 2. Either ground for dismissal is sufficient for claim preclusion. *E.g.*, *Dougherty v. Nynex Corp.*, 835 F.Supp. 22, 23 (D. Me. 1993) (dismissal for failure to respond to a motion to dismiss is "on the merits" for purposes of claim preclusion).

**and 16**.  Therefore, these defenses are barred by both res judicata (claim preclusion) and collateral estoppel (issue preclusion).

These defenses are also barred by Mosaica's releases.  **Undisputed Fact 8.**

### b.     Defendant Connelly's Additional Affirmative Defenses

i.     Lack of jurisdiction and improper service [Dkt. 21, ¶17]

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, Tatonka is a Colorado corporation with its principal place of business in Colorado, Defendant Connelly is a citizen of New York and the Eidelman Defendants are citizens of Georgia.  *Complaint* (Dkt. 1) at ¶2; *Answer and Counterclaim of Defendant Michael Connelly* (Dkt. 21) at ¶2; *Eidelman Defendants' Second Amended Answer, Counterclaims and Jury Demand* (Dkt. 55-1) at ¶2.

This Court has personal jurisdiction over Defendant Connelly because he expressly consented to personal jurisdiction in this Court in each of the Guaranty Agreements that he signed.  **Undisputed Fact 3** and Exhibits 4 through 9 at ¶ 17.[9]

Service of process was sufficient as shown by the *Affidavit of Service* (Dkt. 14) filed in this case on June 6, 2016.  As explained in that *Affidavit of Service*, the Process Server was refused access by the Doorman to the apartment building in New York City where Mr. Connelly resided at the time, so the Process Server left the papers with the

---

[9] See Recommendation of United States Magistrate Judge (Dkt. 68), filed December 29, 2016, at page 3, n.1, and Order entered March 3, 2017, adopting said Report and Recommendations (Dkt. 69).

Doorman and also mailed the papers to Defendant Connelly.  Pursuant to Fed.R.Civ. P. 4(e)(1), service on an individual is valid if it is done pursuant to the law of the state where service is made.  Pursuant to N.Y. Civil Practice Law and Rules § 308(2), service is valid if the summons is delivered in the State of New York to "a person of suitable age and discretion at the actual … dwelling place or usual place of abode of the person to be served and by … mailing the summons to the person to be served at his or her last known residence…."  The New York Court of Appeals has held that if a doorman refuses to allow the process server access to the building, then delivery to the doorman in the lobby is sufficient.  *F. I. duPont, Glore Forgan & Co. v. Chen*, 364 N.E.2d 1115, 1117-18 (N.Y. 1977).  *Accord*, *Sullivan v. 117 Liberty Street, LLC*, No. 12-CV-05066 (PKC), 2013 WL 2304096, *1 (E.D.N.Y. 2013); *Bank of America, N.A. v. Grufferman*, 985 N.Y.S.2d 532, 533 (App. Div. 2014).  Pursuant to applicable New York law, service on Defendant Connelly was valid.

  ii. <u>Lack of reliance by Tatonka [Dkt. 21, ¶23]</u>

   This defense is based on the same allegations that were previously contained in Defendant Connelly's third counterclaim which was dismissed.  Recommendation of United States Magistrate Judge (Dkt. 68), filed December 29, 2016, at pages 17-21 (adopted by the Order entered March 3, 2017 (Dkt. 69)).  This defense fails for the same reasons.

   In addition, Tatonka's alleged "lack of reliance" on the Guaranty Agreements is irrelevant because reliance is not an element of Tatonka's claim for breach of contract.

### c.      **Defendant Gene Eidelman's Additional Affirmative Defenses**

i.      Lack of Mutual Assent [Dkt. 55-1, ¶34]

There is no evidence to support this defense.  The Guaranty Agreements are explicit and unambiguous and clearly guarantee "the due and punctual payment and performance of each of the Obligations of the Borrower [Mosaica] under the Loan Agreement …." which is defined as the "Revolving Loan and Security Agreement dated as of October 30, 2007 between Mosaica and Tatonka".  **Undisputed Fact 4**.  And, as this Court held in dismissing the Eidelman Defendants' first counterclaim for fraud in the inducement, Section 8(f)(iv) of each Guaranty Agreement "explicitly and unambiguously provide[s] that the Guarantors … have not and will not rely on any representations not contained in the Guaranty Agreements, and that no representations made by Plaintiff or any other party, induced the … Defendants into executing the Guaranty Agreements." Recommendation of United States Magistrate Judge (Dkt. 68), filed December 29, 2016, at page 20 (adopted by the Order entered March 3, 2017 (Dkt. 69)).  Just as this Court concluded that the Guarantors cannot rely on alleged representations outside of the Guaranty Agreements because they are "negated by the clear and specific language of section 8(f)(iv)", *id.*, this affirmative defense fails because it is based on alleged reliance on those same alleged representations.

ii.      Good Faith and Fair Dealing [Dkt. 55-1, ¶35]

This issue is addressed below in regard to Defendant Gene Eidelman's second counterclaim.

      iii.    <u>Statute of Limitations [Dkt. 55-1, ¶38]</u>

There is no evidence to support this defense.  The applicable statute of limitations is six years.  C.R.S. § 13-80-103.5(1)(a).  The Guaranty Agreements were entered into in 2013 and this case was filed in 2016.

      iv.    <u>Failure to Mitigate Damages [Dkt. 55-1, ¶40]</u>

There is no evidence to support this defense.  In addition, this defense is barred by res judicata (claim preclusion) and collateral estoppel (issue preclusion) as a result of the Findings by the Court in the Receivership Case as to the amount owed by Mosaica to Tatonka as well as the additional findings made by the Court in the Receivership Case.  **Undisputed Fact 16**.  Under these circumstances, there can be no defense that Tatonka has failed to mitigate its damages.

      v.    <u>Statute of Frauds [Dkt. 55-1, ¶41]</u>

There is no evidence to support this defense.  Each Guaranty Agreement is in writing and signed by Defendant Gene Eidelman.  The statute of frauds, C.R.S. § 38-10-112(1)(b), requires nothing more.

      vi.    <u>Fraudulent Inducement [Dkt. 55-1, ¶¶ 42-47]</u>

This defense is identical to Defendant Gene Eidelman's first counterclaim which was dismissed.  Recommendation of United States Magistrate Judge (Dkt. 68), filed December 29, 2016, at pages 17-21 (adopted by the Order entered March 3, 2017 (Dkt. 69)).  This defense fails for the same reasons.

vii.    <u>Frivolous [Dkt. 55-1, ¶ 48]</u>

This defense is identical to Defendant Connelly's first counterclaim which was dismissed because it was "procedurally deficient."  Recommendation of United States Magistrate Judge (Dkt. 68), filed December 29, 2016, at page 9 (adopted by the Order entered March 3, 2017 (Dkt. 69)).  This defense fails for the same reasons.

## B.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANT CONNELLY'S SECOND COUNTERCLAIM

Defendant Connelly has the burden of proof on his second counterclaim.[10]

In the Recommendation of United States Magistrate Judge (Dkt. 68), filed December 29, 2016, at page 16 (adopted by the Order entered March 3, 2017 (Dkt. 69)), this Court determined that Defendant Connelly's Second Counterclaim is a claim for breach of fiduciary duty.  The elements of such a claim are: Tatonka was acting as a fiduciary of Defendant Connelly with respect to Mosaica; and Tatonka breached its fiduciary duty which caused damages to Defendant Connelly.  CJI-Civ. 26:1 (CLE ed. 2017).

First, the relationship between a lender (Tatonka) and a borrower (Mosaica) is generally <u>not</u> a fiduciary relationship.  *E.g.*, *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 523 (Colo. App. 2006).  *Accord*, *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1111-12 (10th Cir. 2009).  There is no admissible evidence that there was the necessary relationship of trust or confidence between Tatonka and Mosaica, much less between Tatonka and Defendant Connelly.  *Id.*  As in *Alpine Bank v Hubbell*, Defendant Connelly

---

[10] See footnote 2.

cannot show any acceptance by Tatonka of a relation of trust or confidence on which Defendant Connelly could rely. *Id*. at 1112.

Second, the allegations in Defendant Connelly's Second Counterclaim are limited to Tatonka's alleged relationship with <u>Mosaica</u>, and **not** with Defendant Connelly. Defendant Connelly lacks standing to pursue claims on behalf of Mosaica in this case. In addition, if Mosaica ever had any such claims, it is undisputed that Mosaica waived and released them in April 2014. **Undisputed Fact 8**. As a result of those waivers and releases, Defendant Connelly's Second Counterclaim has also been waived and released.

Third, Defendant Connelly's counterclaim for breach of fiduciary duty is also barred by res judicata (claim preclusion) and/or collateral estoppel (issue preclusion). Claim preclusion from the Receivership Case bars this counterclaim whether or not it was asserted in the Receivership Case. *Bostick v. CMM Properties, Inc.*, 772 S.E.2d 671, 673 (Ga. 2015); *Body of Christ Overcoming Church of God, Inc. v. Brinson*, 696 S.E.2d 667, 669 (Ga. 2010). Issue preclusion also bars this counterclaim because Defendant Connelly in fact made the same allegations in the Receivership Case and the Court in that case determined these issues in favor of Tatonka and against Defendant Connelly. **Undisputed Fact 9-16**.

**C.      PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANT GENE EIDELMAN'S SECOND COUNTERCLAIM**

Defendant Gene Eidelman has the burden of proof on his second counterclaim for breach of the implied covenant of good faith and fair dealing in the Guaranty Agreements.[11]

This counterclaim is also barred by res judicata (claim preclusion) and/or collateral estoppel (issue preclusion).   The elements of both of these doctrines pursuant to applicable Georgia state law are explained above.

The Court in the Receivership Case expressly granted standing to Defendants Connelly and Gene Eidelman, as shareholders of Mosaica, for themselves and other similarly situated shareholders, to assert and prosecute "defenses and claims against Tatonka" on behalf of Mosaica.  **Undisputed Fact 11**.  Defendants Connelly and Gene Eidelman fully exercised the right granted to them.  **Undisputed Fact 12**.  The Court in the Receivership Case fully addressed <u>all</u> of the issues raised by Defendants Connelly and Gene Eidelman.  **Undisputed Fact 13**.

Defendant Gene Eidelman's second counterclaim contains <u>only</u> the following material allegations:

¶12:    Incorporation by reference of the Third Affirmative Defense [estoppel], Sixth Affirmative Defense [good faith and fair dealing] and Seventh Affirmative Defense [Tatonka's alleged commercially unreasonable handling of Mosaica's assets].

---

[11] See footnote 2.

The Third Affirmative Defense [estoppel] is addressed above and the Seventh Affirmative Defense [the commercial reasonableness of the sale of Mosaica's assets] was expressly addressed in the factual findings of the Receivership Court.  **Undisputed Fact 16**.

¶13:   Introductory, explanatory statement without any allegations of fact.

This paragraph contains only the conclusory allegation that Tatonka's actions "constitute a breach of the covenant of good faith and fair dealing…."

¶14:   "Tatonka had a duty to act in good faith and deal with Eidelman Defendants fairly in exercising its rights as the Lender and its responsibilities particularly in instances where Tatonka had taken control of Mosaica (the Borrower) which it did."

Importantly, this paragraph expressly ties Tatonka's alleged breaches of the covenant of good faith and fair dealing to Tatonka's alleged conduct in regard to Mosaica.  *Accord*, *Gene Eidelman Deposition Excerpts*, Exhibit 43, at Page 55, Line 17 – Page 56, Line 5.

¶15:   Tatonka's alleged misrepresentations "addressed above, in Eidelman Defendants' First Claim for Relief."

The Eidelman Defendants' first counterclaim, for fraud in the inducement, was previously dismissed.

¶16:   Allegations that Tatonka breached its duty of good faith and fair dealing "when acting in control of Mosaica" and related to the sale of Mosaica's assets.

Like ¶14, the allegations in this paragraph are entirely related to Tatonka's alleged conduct in regard to Mosaica, including the sale of Mosaica's assets in the Receivership Case.  *Accord*, *Gene Eidelman Deposition Excerpts*, Exhibit 43, at Page 56, Lines 6-20.

¶17:   Allegations that Tatonka breached its duty of good faith and fair dealing in regard to its credit bid for Mosaica's assets in the Receivership Case.

These allegations are also entirely related to Tatonka's alleged conduct in regard to Mosaica, including the sale of Mosaica's assets in the Receivership Case.  *Accord*, *Gene Eidelman Deposition Excerpts*, Exhibit 43, at Page 56, Line 21 – Page 57, Line 7.

This examination shows that the only material facts alleged to constitute breaches of the covenant of good faith and fair dealing are those stated in Paragraphs 14, 16 and 17 of Defendant Gene Eidelman's second counterclaim.  Importantly, the allegations in those paragraphs are limited to Tatonka's alleged conduct as to Mosaica including in the Receivership Case.  That alleged conduct, however, was fully dealt with by the Court in the Receivership Case.  Therefore, Defendant Gene Eidelman's second counterclaim is barred by res judicata (claim preclusion) and/or collateral estoppel (issue preclusion).

## CONCLUSION

Pursuant to the Guaranty Agreements, Tatonka is entitled to Judgment in its favor against Defendants Connelly and Gene Eidelman in the amount that is the lesser of the total amount guaranteed by that Defendant or the total amount owed by Mosaica to Tatonka.  As a result, Judgment should be entered in favor of Tatonka as follows:

- against Michael Connelly in the amount of $3,869,000 (the total of the six (6) separate amounts guaranteed in his six (6) separate Guaranty Agreements), plus additional interest and attorneys' fees and costs; and

- against Gene Eidelman in the amount of $4,545,000 (the total of the seven (7) separate amounts guaranteed in his seven (7) separate Guaranty Agreements), plus additional interest and attorneys' fees and costs.

In order to avoid double recovery, Plaintiff believes that the Judgment should be for $3,869,000 jointly and severally against Defendants Michael Connelly and Gene Eidelman, plus additional interest and attorneys' fees and costs, plus an additional $676,000 (the difference between $4,545,000 and $3,869,000) against Defendant Gene Eidelman.

WHEREFORE, Plaintiff prays for entry of Judgment in its favor, and against Defendants Michael Connelly and Gene Eidelman as detailed above, and dismissing Defendant Connelly's second counterclaim and Defendant Gene Eidelman's second counterclaim, with prejudice, and for recovery of its costs incurred herein, including reasonable attorneys' fees pursuant to the Guaranty Agreements, and for such other and further relief as the Court deems proper.

Dated this 31st day of August, 2017.

| /s/ Denis H. Mark | /s/ John Henry Schlie |
|---|---|
| Denis H. Mark | John Henry Schlie |
| **DENIS H. MARK, P.C.** | **JOHN HENRY SCHLIE, P.C.** |
| 5105 DTC Parkway, Suite 450 | 5105 DTC Parkway, Suite 450 |
| Greenwood Village, CO  80111 | Greenwood Village, CO  80111 |
| Telephone: (303) 741-4741 | Telephone: (303) 830-1616 |
| Facsimile: (303) 220-8150 | Facsimile: (303) 220-8150 |
| Email: dmark@dhmpc.com | Email: johnhenry@schlielawfirm.com |

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of August, 2017, I electronically filed the foregoing **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS MICHAEL CONNELLY AND GENE EIDELMAN** with the Clerk of Court using the CM/ECF system.

I also served copies by electronic mail on Defendant Connelly (michaeljconnellynyc@gmail.com), Defendant Dawn Eidelman (ddeidelman@gmail.com) and Defendant Gene Eidelman (gene.eidelman@gmail.com) all of whom have consented to service via electronic means.

/s/ Denis H. Mark_____