IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-cv-01141-MSK-NYW

TATONKA CAPITAL CORPORATION,

    Plaintiff,

v.

MICHAEL CONNELLY,

    Defendant.

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to the Plaintiff's ("Tatonka") Motion for Summary Judgment **(# 83)**, Mr. Connelly's *pro se*[1] response **(# 92)**, and Tatonka's reply **(#95)**; and Mr. Connelly's Motion for Summary Judgment **(# 93)**, Tatonka's response **(# 96)**, and Mr. Connelly's reply **(# 97)**.[2]

## FACTS AND JURISDICTION

The Court summarizes the pertinent facts here and elaborates as necessary in its analysis. Mr. Connelly is the Chief Executive Officer of an entity called Mosaica Education, Inc.

---

[1] Mr. Connelly appears *pro se* in this action, and ordinarily, *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972), would require that the Court construe his pleadings liberally. However, it appears from the record that Mr. Connelly was trained as an attorney and practiced law for some period of time. The 10th Circuit has held that liberal construction need not be extended to the *pro se* pleadings of trained and licensed attorneys. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001).
    Here, although the Court takes the initiative in affixing a label – "mutual mistake" – to the substantive arguments that Mr. Connelly has made, it has not otherwise treated Mr. Connelly's filings any differently than it would the filings by a counseled party.

[2] Consistent with the Court's Order of April 11, 2018 **(# 110)**, former defendant Gene Eidelman's counterclaims against Tatonka are dismissed as abandoned.

("Mosaica"). In 2007, Tatonka entered into an agreement with Mosaica to loan Mosaica up to $10 million via a revolving loan agreement. Pursuant to the agreement, Tatonka made large long-term loans to Mosaica.

Then, in 2013, Mosaica requested new short-term loans from Tatonka, but Tatonka was reluctant to agree. The parties ultimately agreed that Tatonka would make the additional short-term loans if Mr. Connelly (and other principals of Mosaica) executed personal guarantees. Over a period of several months in 2013, Mr. Connelly executed six Guaranty Agreements, promising to personally guarantee various amounts of Mosaica's indebtedness.

Although Mosaica paid off the short-term loans as required, by 2014 it had defaulted on its long term indebtedness to Tatonka. Several lawsuits involving Mosaica ensued, and ultimately the company was eventually placed into a receivership and liquidated. Some $4 million of Mosaica's debt remained unpaid following the liquidation of Mosaica.

Tatonka then turned to the guarantees given by Mr. Connelly. Mr. Connelly disputed that the guarantees applied to the long-term loans as compared to the short-term loans that had been paid off. Tatonka commenced this suit, asserting a single claim against Mr. Connelly for breach of contract. Tatonka moves **(# 83)** for summary judgment against Mr. Connelly. Mr. Connelly filed a cross motion for summary judgment **(# 93)**, a single-page document that incorporates his response to Tatonka's motion by reference.

The Court exercises jurisdiction pursuant to 18 U.S.C. §1332.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.

If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross-motions for summary judgment. "Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently." *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

**B. Tatonka's motion**

Tatonka's motion seeks summary judgment against Mr. Connelly on its claim for breach of contract and on Mr. Connelly's counterclaim for breach of fiduciary duty.

1. Contract claim

The parties appear to agree that Tatonka's claim for breach of contract is governed by Colorado law. To establish a claim for breach of contract under Colorado law, Tatonka must show: (i) the existence of an enforceable agreement, (ii) its own performance of its obligations under the agreement or that such performance was excused; (iii) non-performance by Mr. Connelly of his own obligations under the agreement; and (iv) resulting damages. *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

4

Mr. Connelly contends that Tatonka cannot establish the first element – the existence of a valid and enforceable agreement. He offers several arguments on this point, which the Court will take up serially.

First, he contends that Tatonka cannot demonstrate the existence of a valid contract because the copies of the Guaranty Agreement produced by Tatonka bear his signature, but are not signed by a representative of Tatonka. Except as may be dictated by the Statute of Frauds, there is no requirement that a contractual agreement be signed by the parties, or even be in writing. *See Yaekle v. Andrews*, 195 P.3d 1101, 1107 (Colo. 2008). To the extent that the Statute of Frauds applies, Colorado's statute only requires a written agreement that bears the signature of the party to be bound – here, Mr. Connelly. C.R.S. § 38-10-112(1)(b); *see South Carolina Ins. Co. v. Fisher*, 698 P.2d 1369 (Colo. App. 1984). Because Mr. Connelly's signature appears on the guarantees in question, those guarantees are enforceable against him, even in the absence of a countersignature by Tatonka.

Mr. Connelly also argues that his agreement to guarantee payment of Mosaica's debts did not constitute a valid contract because Tatonka gave no consideration for that promise. Mr. Connelly acknowledges that Mosaica requested "additional advances" from Tatonka, that Tatonka expressed that it was unwilling to continue lending to Mosaica without a guarantee from Mr. Connelly, that Mr. Connelly agreed to and signed the Guaranty Agreement in order to obtain the advances to Mosaica, and that based on Mr. Connelly having done so, Tatonka lent the additional funds. Indeed, the agreements in the record expressly recite that they exist "[t]o induce [Tatonka] to make loans to [Mosaica]." Thus, by Mr. Connelly's own admission, Tatonka gave consideration for his guarantee by lending additional funds to Mosaica.

5

Finally, Mr. Connelly alleges that there was not "meeting of the minds" between the parties, because Mr. Connelly was intending only to guarantee payment of short-term loans that Mosaica was requesting from Tatonka, and was not intending to guarantee Mosaica's entire indebtedness. Under Colorado law, whether a party has accepted the terms of an offer (and thus, whether a "meeting of the minds" has occurred) is judged by an objective standard, determined by whether the party's words or conduct objectively manifest an intent to accept. *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo.App. 2008). Mr. Connelly does not dispute that he signed the guaranty agreements at issue in this case, and thus, all objective evidence would indicate Mr. Connelly's intent to enter into the guaranty agreements.

However, the Court understands Mr. Connelly to be arguing that the actual terms of the written agreements do not correctly reflect the actual debts that Mr. Connelly intended to guarantee. It is undisputed that, by their terms, each of the guaranties (_____) state that Mr. Connelly agrees to pay "all obligations now or hereafter owned to Tatonka" by Mosaica. But Mr. Connelly contends that the parties actually intended that the guarantees would only secure repayment of the new, short-term loans, but not the long-term loans that preceded them.

This argument is one of "mistake of fact" -- that is, that due to a drafting error, the written instrument reflects terms that the parties did not agree upon. Where there is a <u>mutual</u> mistake of fact – *i.e.* where both parties' understanding of their agreement is belied by a drafting error in the written instrument – reformation of the written agreement to match the parties' intention is appropriate. *See Segelke v. Kilmer*, 360 P.2d 423, 426 (Colo. 1961). But where only one party allegedly misunderstood the effect of the written instrument – that is, where the mistake was <u>unilateral</u> – reformation is inappropriate and the contract is enforced according to its terms. *Griego v. Kekkeler*, 543 P.2d 729, 730 (Colo.App. 1975).

In attempting to show a mutual mistake of fact, Mr. Connelly marshals three items of evidence. First, his affidavit describes the series of events that led to the guarantees being given and the short-term loans being made. This recitation is vague as to the actual terms the parties' discussed, offering only the statement that "it was ultimately agreed that Tatonka would adavance an additional $310,000 under the Revolver [loan agreement] . . . provided that [ ] I guaranteed that it would be repaid no later than February 13, 2013." Such assertion, even if credited, does not necessarily refute Tatonka's position that Mr. Connelly was required to guarantee <u>all</u> loans that Tatonka had made or would make to Mosaica, <u>including</u> the $310,000 short-term loan. In addition, Mr. Connelly has not provided deposition testimony from any of Tatonka's principals, attesting to their understanding of the terms of the parties' agreement on the guarantees.

Second, Mr. Connelly has tendered a handful of e-mails that he, or other principals of Mosaica, sent to Tatonka, contemporaneously acknowledging Mosaica's repayment of some of the short-term loans. In addition to noting this fact, the communications also note that the repayment is "in satisfaction of [the] guarantee[s]." Putting aside the inherent ambiguity of the phrase "in satisfaction of the guarantees" – every payment Mosaica made would be "in satisfaction of" a guarantee that covered all of its indebtedness as well – Mr. Connelly has not produced any evidence of Tatonka's officials responding, much less acknowledging their position that the repayment of the short-term loans fully satisfied the terms of his guarantee.

Mr. Connelly's best evidence supporting a mutual mistake of fact argument is a July 28, 2014 e-mail from Eric Gorka, a Tatonka official, to Mr. Connelly, sent after Mosaica had fallen delinquent on its repayment obligations and Tatonka was preparing to sue Mosaica on those obligations. Bearing the subject line "Guarantees," Mr. Gorka's message states "I am confident

7

that there are no personal guarantees from [Mr. Connelly or the other principals of Mosaica] relating to the short term advances or other loan documents." Mr. Gorka notes that another Tatonka official is "reviewing the documents to make certain that they reflect the agreements and that the short terms advances have all been paid," stating that "I believe that they have, but just making sure." Taken in the light most favorable to Mr. Connelly, this evidence could support a claim of mutual mistake. At the time the e-mail was written, Mr. Gorka certainly knew that Mosaica was in default on the long-term loans, but also believed that all of the short-term loans had been paid in full. Thus, his "confident" belief that Mr. Connelly had no personal guarantees that remained extant, notwithstanding Mosaica's unpaid debts, suggests that Tatonka shared Mr. Connelly's understanding that the guarantees secured only the short-term loans. As such, Mr. Connelly has a colorable claim that the actual agreements reflect a mutual mistake of fact, warranting reformation of the guaranty agreements to reflect the parties' true intention that they apply only to the short-term loans.

Tatonka does not attempt to clarify Mr. Gorka's e-mail statements or otherwise elaborate on its own understanding of the negotiations surrounding the guarantees. Instead, it argues only that, because the guaranty agreements contain an integration clause, evidence that the parties might have entertained some other terms of agreement are inadmissible.

This would be so if the question was one of interpretation, but it is not. An integration clause yields where there is an adequate showing that the contract itself was beset by a mutual mistake and must be reformed so as to properly reflect the terms of the parties' actual agreement. *Chilson v. Reed*, 389 P.2d 87, 89 (Colo. 1964) ("[i]t is urged that this evidence violates the rule against the admission of parol evidence to vary or contradict the terms of a written instrument. . . This contention fails wholly to recognize the nature of this action. It was not brought to secure a

8

construction of the deeds as executed, but to correct a mistake, and have the deeds reformed so as to express the intention of the parties"), *see also Blackledge v. Allison*, 431 U.S. 63, 75 n. 6 (1977) (in dicta, stating that an integration clause "carries great weight, but it can be set aside by a court on the grounds of fraud, mistake, duress, or on some ground that is sufficient for setting aside other contracts"); *see also* Restatement (Second) Contracts § 155, comment a. ("the parol evidence rule does not preclude such a showing of mistake").

Accordingly, the Court finds that Mr. Connelly has come forward with sufficient evidence to raise a genuine dispute as to whether there was a mutual mistake of fact between the parties, such that they mutually intended Mr. Connelly's guarantees to run only as to the short-term loans, but were embodied in a guaranty agreement whose language applied to Tatonka's long-term loans to Mosaica as well.[3] Therefore, Tatonka is not entitled to summary judgment on its claim for breach of contract against Mr. Connelly; rather, a trial is required.[4]

2. Fiduciary duty counterclaim

Mr. Connelly asserted several counterclaims **(# 21)** against Tatonka, all but one of which have been dismissed **(# 69)**. The Court understands Mr. Connelly's sole remaining counterclaim to sound in breach of fiduciary duty **(# 68)**. That counterclaim is lengthy and somewhat unfocused, and primarily concerns itself with Tatonka's attempts to seize upon Mosaica's

---

[3] The Restatement observes that states often require claims of mutual mistake to be proven by clear and convincing evidence. *See* Restatement, § 155, comment c. Colorado has not expressly adopted this requirement, although it has stated that "the evidence must clearly and unequivocally show that reformation is appropriate under the circumstances." *Maryland Cas. Co. v. Buckeye Gas Products Co.*, 797 P.2d 11, 13 (Colo. 1990). Because Tatonka has not adduced any evidence affirmatively reciting its principals' understanding of the terms of the parties' agreement, the Court concludes that the appropriate construction of Mr. Gorka's e-mail alone, if otherwise uncontradicted, could satisfy Mr. Connelly's burden.

[4] Colorado makes clear that a request for reformation is an equitable one, suggesting that, at least as to the issue of mutual mistake, the matter is to be tried to the Court rather than a jury. *Maryland Cas. Co.*, *supra*.

weakened financial condition beginning in 2013. It explains that Tatonka "began to assert day-to-day control over Mosaica's operations," installing its own officials as officers of Mosaica and establishing a trust account in Mosaica's name through which Tatonka exercised financial control over Mosaica's assets, engaging in self-dealing at Mosaica's expense. The Court need not recite the various allegations of the counterclaim in detail, as it is clear that the counterclaim is primarily based on harm that Tatonka caused to Mosaica; the only allegation in the counterclaim that asserts harm visited upon Mr. Connelly personally is an allegation that, once Mosaica was in receivership, Tatoka "caused the receiver to . . . terminate [Mr. Connelly's] employment."

In its motion seeking summary judgment on Mr. Connelly's counterclaim, Tatonka notes that Mr. Connelly lacks standing to pursue claims that Tatonka caused harm to Mosaica as an entity. It is clear that Mr. Connelly is not purporting to bring the counterclaim in a derivative capacity on Mosaica's behalf. The counterclaim itself makes no such assertions and Mr. Connelly's response brief seems to disclaim any such intent. *Docket* # 92 at 19 (speculating that Tatonka's arguments "might be relevant if, say, [Mr. Connelly] here were bringing a derivative action on behalf of Mosaica," implying that he was not). Thus, the only portion of the counterclaim that Mr. Connelly has standing to pursue in his own name is the contention that Tatonka somehow breached a fiduciary duty it owed to Mr. Connelly by seeking to have Mosaica's receive terminate Mr. Connelly's employment.[5] It is entirely unclear to the Court how

---

[5] Theoretically, Mr. Connelly might be able to contend that, by improvidently operating (and ultimately liquidating) Mosaica, Tatonka, as receiver, breached a fiduciary duty it owed to Mr. Connelly as a guarantor by failing to extract maximum value from Mosaica, thus increasing the likelihood that Mr. Connelly's guarantees would be activated. Such an argument is not apparent from Mr. Connelly's Answer and Counterclaims, nor his briefing herein. Because Mr. Connelly is a trained lawyer and capable of stating his intended counterclaims with specificity,

10

the elements of a breach of fiduciary duty claim might lie in such circumstances, and Mr. Connelly's summary judgment response fails to address his counterclaim at all. Accordingly, the Court finds that Tatonka is entitled to summary judgment on Mr. Connelly's remaining counterclaim.

### C. Mr. Connelly's motion

Well after the dispositive motion deadline, and simultaneously with the filing of his response to Tatonka's summary judgment motion, Mr. Connelly filed a single-paragraph document purporting to be a motion for summary judgment, seeking judgment in his favor on Tatonka's claim against him and incorporating by reference his own response to Tatonka's motion.[6]

The Court denies Mr. Connelly's motion as untimely. The dispositive motion deadline set by the Scheduling Order **(# 80)** expired in August 2017, two months before Mr. Connelly filed his motion. Mr. Connelly's reply brief argues that "the cross-motion was timely filed," seemingly upon the belief that Tatonka's filing of a dispositive motion somehow granted Mr. Connelly the opportunity to file his own dispositive motion simultaneously with his response. Nothing in the Scheduling Order or in the Court's Local Rules of Practice support such a contention. Accordingly, the Court denies Mr. Connelly's cross-motion as untimely and the Court has not considered any of the briefing relating to that motion.[7]

---

the Court will not attempt to fashion a colorable breach of fiduciary duty counterclaim on Mr. Connelly's behalf.

[6] Curiously, Mr. Connelly's reply brief **(# 97)** in support of his motion runs more than 17 substantive pages.

[7] Even if the Court had considered Mr. Connelly's lengthy reply brief in support of his own motion as part of Mr. Connelly's opposition to Tatonka's timely summary judgment motion, the analysis set forth above would not be different.

11

## CONCLUSION

For the foregoing reasons, Tatonka's Motion for Summary Judgment **(# 83)** is **GRANTED IN PART**, insofar as the Court will enter judgment in favor of Tatonka on Mr. Connelly's counterclaim at the conclusion of proceedings in this action, and **DENIED IN PART**, insofar as there is a triable issue of fact relating to Tatonka's breach of contract claim against Mr. Connelly, and therefore, that claim will proceed to trial. Mr. Connelly's Motion for Summary Judgment **(# 93)** is **DENIED**. The parties shall begin preparation of a Proposed Pretrial Order consistent with the instructions found at Docket # 39 and shall jointly contact chambers to schedule a Pretrial Conference.

Dated this 18th day of July, 2018.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge