# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-cv-01141-MSK-NYW

**TATONKA CAPITAL CORPORATION,**

    Plaintiff,

v.

**MICHAEL CONNELLY,**

    Defendant.

---

## OPINION AND ORDER GRANTING MOTION TO STRIKE JURY DEMAND AND SETTING TRIAL DATE
---

**THIS MATTER** comes before the Court pursuant to the Plaintiff's ("Tatonka") Renewed Motion to Strike Mr. Connelly's Jury Demand **(# 117)**, Mr. Connelly's response **(#120)**, and Tatonka's reply **(# 121)**. Also pending is the setting of a trial date in this matter.

The Court assumes the reader's familiarity with the proceedings to date. In summary, Tatonka asserts a claim for breach of contract against Mr. Connelly, alleging that Mr. Connelly failed to honor a guaranty of loans made by Tatonka to Mosaica, Mr. Connelly's business. Mr. Connelly asserts, as an affirmative defense, that both he and Tatonka intended that his guaranty would apply only to certain loans that have since been repaid. To the extent that the written guarantees say otherwise, they should be reformed due to the parties' mutual mistake.

In his Answer, Mr. Connelly demanded a trial by jury. Tatonka moves to strike the jury demand, arguing that guarantees contain a waiver of any right to a trial to jury in a dispute concerning the guarantees' enforcement. Specifically, Tatonka points to Section 17 of each guaranty is entitled "Governing Law, Etc.". It includes, among other provisions (all set forth in

capital letters), the following language: "The Guarantor [*i.e.* Mr. Connelly] hereby waives any right to a trial by jury in any action, proceeding, or counterclaims concerning any rights under this guaranty, or the other loan documents . . . and agrees that any such action, proceedings, or counterclaim shall be tried before a court and not before a jury."

Preemptive waivers of a party's right to a jury trial are generally enforceable, so long as the party giving the waiver did so knowingly and voluntarily. *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988). Among the factors that courts examine in determining whether a waiver was given knowingly and voluntarily are: (i) the conspicuousness of the waiver in the contract, (ii) the level of sophistication and experience of the parties involved, (iii) the waiving party's ability to negotiate terms of the contract, (iv) the relative bargaining power of each party, and (v) whether the waiving party was represented by counsel. *Tara Woods Ltd. Partnership v. Fannie Mae*, 2010 WL 1529459 (D. Colo. Apr. 1, 2010) *and cases cited therein*; *see also Bevil Co., Inc. v. Sprint/United Management Co.*, 304 Fed.Appx. 674, 582 (10th Cir. 2008). The 10th Circuit has not clearly indicated which party bears the burden of proof where a pre-litigation waiver of a jury right is invoked or challenged. It may be appropriate for the party opposing a jury trial to shoulder that burden, given that the Seventh Amendment otherwise guarantees to parties the right to a jury's determination. *See e.g. Webster Capital Finance, Inc. v. Newby*, 2013 WL 589626 (D.Kan. Feb. 14, 2013). Accordingly, this Court will assume that Tatonka bears the burden of proving Mr. Connelly's waiver of his jury right was knowing and voluntary.

Turning to each of the listed factors, the Court first considers whether the waiver of the jury right in the guarantees was conspicuous. Although Mr. Connelly takes some issue with the vagueness of Section 17's title ("Governing Law, etc." instead of a specific reference to a waiver

of jury rights), the fact that the section is lengthy and contains numerous provisions besides the jury waiver, and the fact that it does not immediately precede the signature line of the guarantee, the Court cannot say that any of those alleged defects, individually or in concert, render the provision less-than-conspicuous.  Unlike any other paragraph in the guarantees, Section 17 is set off entirely in capital letters, attesting to its particular importance.  Even a casual reading of the first few lines of that section reveal that the section involves concessions of important litigation rights, including choice of law and forum selection clauses in the first two sentences, further suggesting that the contents of that section should not be ignored lightly.  The language of the waiver itself is simple and straightforward, not likely to confuse even the least sophisticated of readers.  Mr. Connelly's position that, to be sufficiently "conspicuous," a waiver must be in a separate section of a contract, or must be located at a specific place in the document imposes far more exacting requirements than courts have articulated.  Accordingly, the Court finds that the jury waiver language was sufficiently conspicuous.

As to the next factor, Mr. Connelly's response concedes that "his level of sophistication was adequate under the circumstances," but the Court believes some additional discussion is warranted.  It is undisputed that Mr. Connelly – an attorney with nearly 40 years of business experience -- was serving as the CEO of Mosaica at the time, and had occupied that position for nearly 15 years when the guarantees were executed. The parties acknowledge that Mosaica had already borrowed millions of dollars from Tatonka over that time, and that the guarantees that Mr. Connelly signed on his own behalf in 2013 amounted to nearly $4 million more.  In other words, this was no ordinary, low-stakes commercial transaction involving an unsophisticated borrower.  Mr. Connelly was a sophisticated businessman and attorney, routinely doing business

involving considerable sums of money. He was not merely of "adequate" sophistication – he was an extremely sophisticated participant in these transactions.

Mr. Connelly insists that he was not able to negotiate the terms of the guarantees with Tatonka, but that argument falters in the face of his own affirmative defense. The printed terms of the guarantees make clear that Mr. Connelly was guaranteeing <u>all</u> of Mosaica's indebtedness to date. But Mr. Connelly insists that, in discussions with Tatonka, both sides understood and agreed that the guarantees would only apply to certain specific debts of Mosaica. The fact that Mr. Connelly was – allegedly – able to convince Tatonka to accept a less-than-comprehensive guarantee of all of Mosaica's indebtedness suggests that Mr. Connelly had (and successfully used) some ability to bargain over the terms of the guarantees. Moreover, even if Mr. Connelly wasn't able to negotiate the terms of the guarantees themselves, the entire factual record reflects that Mr. Connelly, on behalf of Mosaica, had a long and productive business relationship with Tatonka, which tends to tip this factor in favor of a finding that his waiver of a jury right in the guarantees was voluntary.

Similarly, Mr. Connelly argues that he lacked any meaningful bargaining power when entering into the guarantees because Mosaica needed additional loans immediately to avoid an imminent default and because Mosaica had already pledged all of its other assets to Tatonka to support the current loans. Thus, he contends, he had no choice but to cede to Tatonka's demands, including its demand that he waive a jury trial on the guarantees. But this argument mistakenly equates <u>Mosaica</u>'s desperate need for additional capital with <u>Mr. Connelly</u>'s ability to grant or withhold his own personal guarantee of Mosaica's debts. Although Mosaica may not have had any more assets to offer another lender as collateral, and thus lacked any bargaining power relative to Tatonka (a finding the Court need not make), it is clear that Mr. Connelly's

personal guarantee was an asset that he could offer to any willing lender, not just Tatonka.  The long business history between Tatonka and Mosaica may have caused Mr. Connelly to consider Tatonka as his best choice for borrowing additional funds, but that same long business history would also tend to dissipate, rather than strengthen, a belief that Tatonka would use its bargaining power to force Mr. Connelly to agree to a guarantee he would not otherwise have given.  Once again, this is not the type of contract where an inexperienced consumer is forced to waive a jury right in order to, say, rent a car from the only rental agency in town; Mr. Connelly had considerably more bargaining power than that, even with Mosaica's dire need for funds.  Accordingly, this factor, to the extent it tips in either direction, favors a finding that Mr. Connelly gave his guarantee, including a waiver of a jury trial, willingly.

Finally, although Mr. Connelly insists that he was not represented by counsel when he agreed to enter into the guarantees, the fact remains that Mr. Connelly is an attorney, and an experienced one at that.  He was fully capable of reading and understanding the jury waiver in the guarantee, and, as explained above, was fully capable of negotiating with Tatonka or seeking out another lender if he disagreed with the guarantees' terms.  Thus, the Court finds that Tatonka has carried its burden of showing that his waiver was knowing and voluntary.  The Court grants Tatonka's motion to strike his jury demand.

In addition, as the Court previously noted, Mr. Connelly's defense of mutual mistake sounds in equity, as it seeks judicial reformation of the guarantees as its primary relief.  In such circumstances, that defense would be tried to the Court regardless.  *Maryland Cas. Co. v. Buckeye Gas Products Co.*, 797 P.2d 11, 13 (Colo. 1990).  Thus, there is a separate and independent basis for striking Mr. Connelly's jury demand, regardless of the sufficiency of his waiver.

Accordingly, Tatonka's Renewed Motion to Strike **(# 117)** is **GRANTED**.

That leaves the setting of this matter for a bench trial. As the Court previously advised the parties at the Pretrial Conference **(# 118)**, upon their submission of a revised Proposed Pretrial Order, the Court would set this matter for trial "in November or December." The parties have submitted that revised document (and the Court approves it), making it appropriate to now set this case for trial. The Court will conduct a bench trial in this matter, beginning on **December 4, 2018**, and continuing, if necessary, to **December 5, 2018**. Trial will begin at 9:00 a.m. on each day.

Dated this 13th day of November, 2018.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Chief United States District Judge